8109 Hough, Inc., *v.* City of Cleveland.

(No. 897,251—Decided December 29, 1971.)

Common Pleas Court of Cuyahoga County.

*Messrs. Shulman & Shulman*, for plaintiffs.
*Mr. Richard Hollington, Jr.*, director of law, and *Mr. Walter E. Chavers*, assistant director of law, for defendant.

McMonagle, J.   The city of Cleveland demolished a structure that had been located at 8109 Hough Avenue, Cleveland, Ohio.   In this action, the plaintiff, who is the owner of that property, asks the court to enjoin the assessing of the costs of demolition, against the real property, by the defendant city of Cleveland.

This action is based upon the contention of the plaintiff that this property is in an urban renewal area and that under the provisions of Section 14.110 of the ordinances of the city of Cleveland, that the costs and expenses of such demolition are not to be assessed against the real property

but are to be paid out of funds provided for the prosecution of an urban renewal plan or a community development plan, as it is now denominated, for the area involved. It is the contention of the city of Cleveland that the demolition of the subject structure merely constitutes the removal of a nuisance and that under the ordinances of the city of Cleveland, the costs of such removal must be assessed against the real property.

In 1960-1961, the city of Cleveland took all required steps so as to designate the area in which the subject property is located as a part of the Cleveland-University-Euclid Urban Renewal Area. The area is also designated as GNRP No. Ohio R-32 (GN).

This urban renewal area is divided into four sections or areas. Section No. One is referred to as University-Euclid Renewal Project No. One, Ohio R-44.

It is only in Area No. One that renewal activity has actually been undertaken by the defendant even though GNRP Ohio 32 (GN) was created some ten years ago.

It is the contention of the defendant that because it has done nothing by way of renewal of Areas Nos. One, Two and Three, other than to place the dead hand of urban renewal upon the area incompassed therein, that laws which should generally apply uniformly to all sections of a renewal area apply to the one section thereon (Section One) but do not apply to the other three sections.

Applicable ordinances specify the types of proposed renewal actions to be carried on in urban renewal areas. The proposed renewal actions specified by ordinances for the University-Euclid GNRP, Ohio R-32 (GN) and also for the University-Cleveland Urban Renewal Project No. One, Ohio R-44 therein, are identical. (See Exhibit 8—Vol. 111, Page 1, *et seq.*, Records of County Recorder.) They follow:

"Section 3. Types of Proposed Renewal Actions

"Proposed renewal actions in the University-Euclid Urban Renewal Project Area comprise a combination of the following activities: acquisition, clearance, sale, and re-use of property; vacation and dedication of public

rights-of-way; public works; private rehabilitation; and controls and restrictions."

Sections 14.1108 and 14.1110 are included in Part 14 of the Community Development Code of the city of Cleveland and in 1966, replaced the previously adopted Section 1.5102 and 1.5108 which were in effect at the time the area was designated as an urban renewal area. Both the new sections and the old sections are substantially identical. It appears as though the legislative body felt, however, that the use of the words "Community Development Area" sounded better than "Urban Renewal Area." Since the city of Cleveland has adopted a charter under the home rule provisions of the Ohio Constitution, there can be no doubt but that its ordinances are applicable to the issues presented herein. However, the Ohio statute on the subject is to the same effect as the city ordinances.

R. C. 715.261:

"The cost of removing a building or other structure which is located within an area determined by the legislative authority of the municipal corporation to be an urban renewal area included within an urban renewal plan shall not be certified to the county auditor to be placed upon a tax duplicate."

The first step towards achieving the ultimate in renewal of any area is the complete elimination of the structures which either were decayed and substandard at the time of such designation of the area, or became so since, —partially because of the designation. Many structures therein actually did or do constitute a nuisance.

The general purpose of all urban renewal is to protect and advance the health, welfare and morals of a community. It is not for the benefit of any particular individual or individuals. It is for the benefit of the entire community and by law, the overall expenses thereof usually constitute a public charge which is borne two-thirds by the Federal government and one-third by the local government. Much of the share of a local community is in the form of non cash grants in aid.

The evidence herein establishes that abstract com-

panies of this community who guarantee and insure the title to real property consider that the designation of an area as an *urban renewal area* constitutes a cloud on the title of all real property located therein. The record of the designation of such an area and particularly the subject area is filed by the defendant with the recorder of the county. It would appear that it is the opinion of such title companies—whose opinion as to such matters is respected by the court—that such action by the public body constitutes a partial taking of the property.

The designation by a legislative body of an urban renewal area as an "Urban Renewal Area" or to call it by another name, "A Community Development Area" has, as a matter of fact, then constituted the taking of private property for a public use (Fifth Amendment of the Constitution of the United States, Article 1, Section 19 of the Constitution of Ohio), and the demolition of structures therein is for the public welfare. The costs and expenses in connection therewith should be borne by the governments involved and not by one individual; that is, the property owner.

The court is not concerned with what particular fund should bear the costs and expenses of the demolition of a structure in an urban renewal area. The demolition actually advances the general purpose of urban renewal or community development for the benefit of the entire community. The involved governmental agencies can make that determination.

It is the judgment of this court that the pertinent ordinances were intended to and should be so construed as to entitle the plaintiff to the relief prayed for in its complaint; that everyone's constitutional safeguards should be so applied as to protect not only the plaintiff herein but others similarly affected from what could amount to complete confiscation of his real property by the state or one of its branches. The prayer of the complainant will be granted.

*Judgment for plaintiff.*