THE STATE, EX REL. EATON, APPELLEE, *v.* PRICE, CHIEF OF POLICE, APPELLANT.[*]

*Judgment affirmed, 168 Ohio St., 123.

(No. 2439—Decided November 2, 1957.)

*Mr. Arthur T. Eaton,* for appellee.

*Mr. Herbert S. Beane,* city attorney, *Mr. Maurice J. Gilbert* and *Mr. Joseph P. Duffy,* for appellant.

WISEMAN, J. This is an appeal on questions of law from a judgment of the Common Pleas Court of Montgomery County discharging Earl Taylor, referred to throughout this opinion as relator [Arthur T. Eaton being erroneously named as relator in the caption of the case] from the custody of the respondent on a writ of habeas corpus.

The relator was arrested for unlawfully refusing "to permit a duly authorized agent of the Division of Housing Inspection of the city of Dayton to enter and survey the said premises for the purpose of repairs or alterations as are necessary to comply with the provisions of minimum housing standards," contrary to Section 806.30 of Ordinance No. 18099 of the city of Dayton.

The relator's testimony being uncontradicted, there is no dispute as to the facts. The relator and his wife have lived for 11 years in the residence in question, the record title being in the name of the wife. The house is strictly a private residence, which at the time in question was in a good, clean, safe and sanitary condition. No complaint had been filed with respect to the condition of the premises. The inspectors had been inspecting other houses in the block. The inspectors called several times at the residence of relator and sought entrance for the purpose of inspection. Upon learning that the inspectors had no search warrant, the relator refused them entrance. The arrest of the relator followed. After pleading "not guilty," the relator was incarcerated in the city jail in lieu of bond. He was released from jail by the Common Pleas Court of Montgomery County on a writ of habeas corpus. Upon hearing, he was discharged from custody, on the ground that the ordinance

in question was unconstitutional and void, and that, therefore, the Municipal Court of Dayton had no jurisdiction.

Two errors are assigned: Error in passing on the constitutionality of the city ordinance in a habeas corpus proceeding; error in holding the inspection section (806-30) of the ordinance to be violative of the Fourth Amendment to the Constitution of the United States and Section 14, Article I of the Constitution of the state of Ohio.

There is a diversity of opinion on the question whether the constitutionality of an ordinance may be raised in a habeas corpus proceeding. In Ohio the minority rule prevails, which is stated in 26 Ohio Jurisprudence (2d), 566, Section 13, as follows:

"In Ohio, it is expressly held that a writ of habeas corpus will not lie to test the constitutionality of a statute or ordinance, in favor of one who has been convicted thereunder, where the criminal court in which the conviction was obtained had jurisdiction to determine the question of constitutionality; in such case the writ of habeas corpus cannot be made the substitute for an appeal." (Cases cited.)

Also, a corollary to the above rule is stated on page 567, as follows:

"Also, it has been held that the constitutionality of statutes and ordinances may be passed upon where the petitioner is under arrest but has not been tried and convicted, and the same rule obtains where the applicant is held for appearance before the proper court upon preliminary hearing." (Cases cited.)

The relator in the instant case has not been convicted. The matter is pending in the Municipal Court of Dayton on his plea of "not guilty." The rule urged by appellant has no application where there has been no conviction. This differentiation was not made in the case of *State, ex rel. Focke,* v. *Kirkpatrick,* 99 Ohio App., 131, 131 N. E. (2d), 591. We are required to follow the rule laid down by the Supreme Court in the cases referred to in the footnote in 26 Ohio Jurisprudence (2d), 566 and 567. The first assignment of error is not well made.

Is the ordinance of the city of Dayton constitutional? The grant of powers of local self-government is conferred on municipalities by Section 3, Article XVIII of the Ohio Constitution, which provides:

"Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

It is not contended that the ordinance is in conflict with general laws. On the other hand, it is contended that the ordinance was enacted in pursuance of specific statutes. Section 715.26, Revised Code, in part provides:

"Any municipal corporation may:

"(A) Regulate the erection of buildings and the sanitary condition thereof, the repair of, alteration in, and addition to buildings;

"(B) Provide for the inspection of buildings or other structures and for the removal and repair of insecured [insecure] buildings;"

"(* * * *)"

Section 715.29, Revised Code, provides:

"Any municipal corporation may:

"(A) Regulate by ordinance the use, control, repair, and maintenance of buildings used for human occupancy or habitation, the number of occupants, and the mode and manner of occupancy, for the purpose of insuring the healthful, safe, and sanitary environment of the occupants thereof;

"(B) Compel the owners of such buildings to alter, reconstruct, or modify them, or any room, store, compartment, or part thereof, for the purpose of insuring the healthful, safe, and sanitary environment of the occupants thereof;

"(C) Prohibit the use and occupancy of such buildings until such rules, regulations, and provisions have been complied with."

The purpose of ordinance No. 18099 is stated in the preamble as follows:

"Establishing minimum standards governing utilities, facilities and other physical things and conditions essential to make dwellings safe, sanitary and fit for human habitation; establishing minimum standards governing the conditions and maintenance of dwellings, dwelling units, rooming houses and rooming units; fixing certain responsibilities and duties of owners, operators and occupants of dwellings, dwelling units,

rooming and boarding houses and rooming units; requiring permits for the operation of rooming and boarding houses and establishing fees therefor; establishing a Bureau of Housing Inspection and establishing a Housing Appeals Board; fixing the power and duties of the Housing Inspector for administration and enforcement of the ordinance; authorizing the adoption of rules and regulations by the Housing Inspector to carry out the provisions and purposes of the ordinance; authorizing the inspection of dwellings, the rehabilitation of dwellings and the vacation and removal of dwellings unfit for human habitation; and providing penalties.

"Whereas, in the city of Dayton there are dwellings and rooming houses which are so dilapidated, unsafe, dangerous, unhygienic or insanitary as to constitute a hazard and menace to the health, safety, morals and welfare of the residents of such dwellings and rooming houses as well as of the people of the city of Dayton; now, therefore,

"Be it ordained by the Commission of the City of Dayton:"

Section 806-30 of said ordinance in part provides:

"(a) The Housing Inspector is hereby authorized and directed to make inspections to determine the condition of dwellings, dwelling units, rooming houses, rooming units and premises located within the city of Dayton in order that he may perform his duty of safeguarding the health and safety of the occupants of dwellings and of the general public. For the purpose of making such inspections and upon showing appropriate identification the Housing Inspector is hereby authorized to enter, examine and survey at any reasonable hour all dwellings, dwelling units, rooming houses, rooming units, and premises. The owner or occupant of every dwelling, dwelling unit, rooming house, and rooming unit or the person in charge thereof, shall give the Housing Inspector free access to such dwelling, dwelling unit, rooming house or rooming unit and its premises at any reasonable hour for the purpose of such inspection, examination and survey."

Section 806.83 prescribes a penalty by way of fine or imprisonment for a violation of any provisions of the ordinance.

The relator refused on several occasions to permit housing inspectors to enter his home without a search warrant, although

it is not disputed that the inspectors requested access at reasonable hours. Furthermore, it is conceded that no emergency existed.

Relator contends, and the lower court was in accord, that the ordinance exceeded the police power of the city by providing for inspection of a private dwelling against the will of the occupant and without a search warrant, and that the ordinance for that reason was in violation of the constitutional provisions in the federal and state Constitutions which prohibit "unreasonable searches."

The Fourth Amendment to the Constitution of the United States provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized."

The Fourth Amendment has no application to the states. *State* v. *Lindway,* 131 Ohio St., 166, 2 N. E. (2d), 490. But the Ohio Constitution contains a similar provision. Section 14 of Article I of the Ohio Constitution provides:

"The right of the people to be secure in their persons, houses, papers, and possessions, against unreasonable searches and seizures shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, particularly describing the place to be searched, and the person and things to be seized."

The right of the individual to be secure in his property, unless good cause be shown to the contrary, very early found a place in the Anglo-Saxon law, which has been epitomized in the legal maxim—"Every man's house is his castle." The legal principle stated in this maxim is embodied in the above constitutional provision.

A new and controversial question is presented, which is: Does the constitutional provision against unreasonable search limit the city of Dayton in the exercise of the police power with regard to the right of inspectors to enter private dwellings without a search warrant and against the will of the occupant?

This is a case of first impression in Ohio. After a careful search only a few cases have been found in other jurisdictions where the precise question presented here has been discussed or decided. In *District of Columbia* v. *Little,* 178 F. (2d), 13, 13 A. L. R. (2d), 954 (U. S. C. A., District of Columbia, 1949), the accused was convicted in the Municipal Court for the District of Columbia upon an information which charged that on certain premises on a certain day she hindered, obstructed and interfered with an inspector of the health department in the performance of his duty. A reversal of the conviction by the Municipal Court of Appeals was sustained on an appeal to the United States Court of Appeals for the District of Columbia. In that case the evidence shows that the inspector was ordered by the health officer to make an inspection of the premises after a complaint had been made "that there was an accumulation of loose and uncovered garbage and trash in the halls of said premises and that certain of the persons residing therein had failed to avail themselves of the toilet facilities." It was not disputed that the premises was a private residence, the home of the accused; that the inspector had no search warrant; that the accused refused to unlock the door; and that she was thereupon arrested. Every legal question raised in the case at bar is discussed by the court in the *Little case,* either in the majority opinion or in the dissenting opinion. The relator herein relies on the majority opinion in that case, and the respondent relies on the dissenting opinion. Quoting from A. L. R., the court, on page 958, states the question raised: Can a health officer of the District of Columbia inspect a private home without a warrant if the owner objects? We quote several paragraphs of the A. L. R. headnotes as follows:

"1. Reasonable searches are, by implication, permitted by the Fourth Amendment to the Constitution of the United States prohibiting unreasonable searches and seizures.

"2. The reasonableness of a search without a warrant is adjudged solely by the extremity of the circumstances of the moment and not by any general characteristic of the officer or his mission.

"3. Except for the most urgent of necessities, the question of reasonableness of a search is for the magistrate and not for the enforcement officer.

''* * *

''6. The Fourth Amendment to the Constitution of the United States prohibiting unreasonable searches is a precautionary statement of a lack of federal governmental power as to a right already belonging to the people, coupled with a rigidly restricted permission to invade the existing right.

''7. The public importance of health laws and the beneficence and forbearance of health officers do not justify violation of the constitutional provision against unreasonable searches.

''8. A government official may not invade a private home without the authorization of a magistrate, in the absence of an immediate major crisis in the performance of duty affording neither time nor opportunity to apply to a magistrate.
''* * *

''10. 'Inspection' of a home by a health officer is a 'search' thereof within the meaning of the Fourth Amendment to the Constitution of the United States prohibiting unreasonable searches.

''11. Although the Fourth Amendment to the Constitution of the United States prohibiting unreasonable searches and seizures was intended to forestall the use of general warrants, the amendment was not intended as a protection against general warrants alone.

''12. An act of Congress purporting to permit the invasion of homes by police officers without warrants, except under the established exception of unavoidable crisis, is void as in violation of the Fourth Amendment to the Constitution of the United States prohibiting unreasonable searches and seizures.

''13. Health officials may not, without a warrant and against the occupant's protest, invade a private home to investigate a complaint as to uncleanliness, the accumulation of garbage in the halls, and a failure of certain occupants to avail themselves of toilet facilities therein.''

In the dissenting opinion Judge Holtzoff says:

(Page 21): ''The Fourth Amendment does not ban all searches. It prohibits only those that are unreasonable. * * *''

(Page 22): ''The Fourth Amendment was intended and is to be construed to apply only to criminal prosecutions and proceedings of a quasi-criminal nature for the enforcement of pen-

alties. * * * It does not affect the administration of law if criminal prosecutions or suits for penalties are not involved. It does not apply to inspections, if no seizure is intended."

(Page 23): "The conclusion that the prohibitions of the Fourth Amendment are limited to proceedings of a criminal or penal nature, is supported by the fact that apparently the Congress has never enacted any statutes providing for the issuance of search warrants for any purpose other than the enforcement of the criminal law. The inference is clear that the legislative branch of the government has continuously construed the Fourth Amendment in the manner here indicated. While this consideration is not conclusive, it is nevertheless entitled to great weight in interpreting the Constitution. Specifically, there is no existing statute under which a health inspector, a plumbing inspector, or a building inspector may obtain a warrant authorizing him to enter a building for the purpose of a routine inspection. It has always been assumed that no search warrant is necessary. * * * Moreover, even if an Act providing for such search warrants should be placed upon the statute books, how can an inspector make a showing of probable cause as a basis for the issuance of a warrant for the purpose of an ordinary, routine examination? Regular periodic inspections are conducted for the purpose of making certain that laws relating to sanitation and safety are being observed. * * *"

(Page 24): "If a search warrant were necessary for such recurring inspections, the requirement would amount to turning over the supervision of administration from the executive to the judicial branch of the government, which, as the Supreme Court has observed in the past, would be a source of mischief and is contrary to the philosophy of our form of government. The Constitution contemplates a tripartite division of government into three coordinate branches. It was not intended that the judicial branch should have supervisory control over the executive. * * *

"* * *

"* * * There is no judicial document known to the law that would confer authority merely to inspect premises for the purpose of ascertaining whether certain laws, such as those relating to public health and public safety, are being observed. Such

scrutiny has always been conducted by properly authorized officers without the requirement of judicial sanction. In effect, the opinion of the court proposes to create a new type of process, unknown to the common law or to any statute, and to confer power on the judiciary, that it has never possessed, to supervise the performance of routine administrative duties."

The judgment in the *Little case* was affirmed by the Supreme Court of the United States in 339 U. S., 1, 94 L. Ed., 599, 70 S. Ct., 468. However, the Supreme Court avoided passing on the constitutional question. The syllabus is as follows:

"1. Respondent's mere refusal to unlock the door on substantial constitutional grounds was not the kind of interference prohibited by the regulation.

"2. The foregoing conclusion makes it unnecessary to decide whether the Fourth Amendment forbade the health officer to enter respondent's home without a search warrant."

The gist of the court's ruling is found on page 5, as follows:

"The officer had no search warrant. While he was standing outside the door, respondent returned. She protested the right of the inspector to enter her private home, claiming that his entry would violate her constitutional rights. She neither used nor threatened force of any kind. In view of these facts found by the courts below, the question boils down to whether respondent's mere refusal to unlock the door accompanied by remonstrances on substantial constitutional grounds was the kind of interference prohibited by the regulation. We hold that it was not."

Mr. Justice Burton wrote a dissenting opinion, in which Mr. Justice Reed concurred, as follows:

"If this court is to interpret an ordinance of the District of Columbia, it seems to me that the action of the respondent was an effective interference with an inspector of the District Health Department in the performance of his official duties, and that such conduct of the respondent violated the ordinance that is before us. In my opinion, also, the duties which the inspector was seeking to perform, under the authority of the District, were of such a reasonable, general, routine, accepted and important character, in the protection of the public health and safety, that they were being performed lawfully without such a search war-

rant as is required by the Fourth Amendment to protect the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures.''

In *Givner* v. *State,* 210 Md., 484, 124 A. (2d), 764 (Court of Appeals of Maryland, 1956), the court held that provisions of a city code of Baltimore imposing a penalty upon the owner or occupier of any house or dwelling who refuses to permit the health commissioner or chief engineer of the fire department, or their authorized representatives, from entering premises for the purpose of inspecting the same during daylight hours, to determine whether the structure complied with the safety provisions of the code, are not unconstitutional as authorizing search without a warrant. We quote from several paragraphs of the Atlantic (2d) headnotes as follows:

''Although Fourth Amendment of United States Constitution is not binding upon the states, in considering our own Constitution and statutes relating to the subject of unlawful searches and the admissibility of evidence thereby obtained, decisions of the United States Supreme Court on the similar Fourth Amendment are entitled to great respect.

''Attempted inspections by health commissioner, fire and building inspectors under ordinance authorizing their inspection of premises and imposing penalties upon owners or occupiers of such premises who refuse to permit their inspections was in exercise of police power.''

''Municipal ordinances authorizing health, fire and building inspectors to enter upon premises during daylight hours, for the purpose of inspecting such premises to determine compliance with code provisions, and providing a penalty to the owner or occupier of premises who refuses to allow such inspections, were not unreasonable or unconstitutional as an authorization of an illegal search of the premises.''

In that case the building which the officer attempted to inspect was not a private dwelling but a three-floor apartment house. In fact, the city ordinance excepted private residences from its operation. The building was defined in the ordinance as a ''multiple dwelling.'' However, the court found that the defendant had expressly waived all defenses on technical grounds, including the defense that the ordinance excepted

private dwellings from inspection. The Constitution of Maryland does not expressly provide against unreasonable searches and seizures. The court held that while the Fourth Amendment is not binding upon the states, due recognition would be given to decisions of the Supreme Court of the United States interpreting the Fourth Amendment. On the distinction between a search in a criminal case and in a civil matter, and whether the search is reasonable or unreasonable, the court on page 504 said:

"* * * In the instant case, if despite the fact that the Fourth Amendment is not applicable, the tests of reasonableness which are applicable under it should be applied under either Maryland law or the Fourteenth Amendment, a search for evidence to prove guilt of a crime would present a situation which we should regard as substantially different from that presented by an inspection for the purpose of protecting the public health or safety. True, the privacy of the home of an individual is invaded whatever may be the reason for the search; but in the one case the liberty of the individual is at stake and in the other the health and safety of the public. The latter are the objectives of the inspection in the present case."

Again, on page 505 the court said:

"* * * we have the fact that these inspections are of a routine nature, are to be made at reasonable hours and are primarily for protective, not punitive purposes. In these circumstances, we consider the proposed inspections reasonable, and in our opinion the case falls within one of the intermediate constitutional contentions stated in the *Little case* under which 'municipalities and other governing agencies may lawfully provide for general routine inspections at reasonable hours without search warrants.' We hold that such inspections are not unreasonable and hence are not unlawful."

The question presented here has been discussed from the viewpoint of the absence of a search warrant. It is interesting to note the statutory law in Ohio with respect to search warrants. Sections 2933.21 to 2933.31, inclusive, Revised Code. Section 2933.22, Revised Code, provides:

"A warrant of search or seizure shall issue only upon probable cause, supported by oath or affirmation particularly *de-*

*scribing the place to be searched and the property and things to be seized.''* (Emphasis ours.)

What search warrants shall contain is set forth in Section 2933.24, Revised Code, which in part provides:

"A warrant for search shall be directed to the proper officer * * * and particularly describe the things to be searched for, the house or place to be searched, and the person to be seized. Such warrant shall command the officer to search such house or place for the property or other things, and to bring them, together with the person to be seized, before the judge or magistrate. * * *."

These statutory provisions are found under Title XXIX [29] Crimes—Procedure, and the provisions of the statutes are directed solely to criminal matters and have no application whatever to civil matters. In the instant case, there could be no seizure of a person or things as provided in the statute, and Section 14, Article I of the Ohio Constitution.

It will be observed that the constitutional provision prohibits "unreasonable searches." It is necessarily implied that there is no constitutional provision against reasonable searches.

However, in our opinion, the question presented should be determined on the basis of whether the ordinance is a valid or invalid exercise of the police power, rather than on the basis of whether a search warrant is or is not required.

The ordinance under consideration was enacted in pursuance of Section 715.26, Revised Code, above quoted, and, also, in pursuance of the police power conferred on municipalities by Section 3, Article XVIII of the Ohio Constitution. Police power is constantly in the process of evolution and development and must be adapted to the conditions of the times.

In 10 Ohio Jurisprudence (2d), 412, Section 335, the breadth of the police power is stated as follows:

"The police power includes anything which is reasonable, necessary, and appropriate to secure the peace, order, protection, safety, good health, comfort, quiet, morals, welfare, prosperity, convenience, and best interests of the public."

In Section 336 at page 415, it is stated:

"It may be said in a general way that the police power extends to all of the great public needs. Being based on the

public safety, the public health and morals, and the general welfare, it is as broad as these conditions may require. The police power has been described as the law of necessity and as being coextensive with the necessities of the case and the safeguards of public interest. The measure or dimensions of police power available to the government are the measure or dimensions of public need, whether they apply to health, safety, protection, or general welfare, except as qualified by state and federal Constitutions.

"The dimensions of the government's police power are identical with the dimensions of the government's duty to protect and promote the public welfare."

In Section 338, on page 416, it is stated:

"The police power is not static and must ever be exercised in the light of changing conditions and the public needs. It is not circumscribed by fixed limits, but is capable of development and modification within certain limits, so that the powers of governmental control may be adequate to meet changing social, economic, and political conditions."

On page 445, in Section 369, it is stated:

"To be truly in the public welfare and thus superior to private property rights, legislation must confer upon the public benefits commensurate with its burdens upon private property. The benefits to society, reasonably to be expected, must not be out of proportion to the restraint imposed and the detriment inflicted on citizens by such restraint."

The limitations on the police power are discussed in Section 356 at pages 429 and 430. On page 430 it is stated:

"* * * it is subject to particular limitations namely: (1) the purpose of the statute, ordinance, or regulation must fall within the scope of the police power; (2) the act must be reasonably designed to accomplish this purpose; and (3) must not be arbitrary, discriminatory, oppressive or otherwise unreasonable."

In the application of these principles to the ordinance under consideration, we conclude that the ordinance falls within the scope of the police power, is reasonably designed to accomplish its purpose, and is not arbitrary, discriminatory or unreasonable.

The burden is on relator to show the unconstitutionality of the ordinance. In 10 Ohio Jurisprudence (2d), 227, Section 151, it is stated:

"* * * the burden of showing the unconstitutionality of a statute or ordinance is upon the one challenging its validity. The proof of unconstitutionality must be clear and beyond a reasonable doubt."

The rule with respect to the power of the courts to review a legislative determination as to whether there has been a proper exercise of the police power is stated in 10 Ohio Jurisprudence (2d), Section 152, beginning at page 227, as follows:

"The courts have power to review a legislative determination as to what is a proper exercise of the police power but such review is limited and courts are inclined to defer to the judgment of the state or municipal legislative body to which the matter is committed in the first instance, and will not interefere unless it is clear that the statute or ordinance has no real or substantial relation to the public health, morals, safety, or welfare, or is unreasonable or arbitrary, and infringes rights secured by the fundamental law.

"It belongs to the General Assembly or other legislative body clothed with the police power to determine primarily what measures are appropriate or needful for the promotion of the objects of the police power.

"When legislation has a real and substantial relation to the prevention of conditions detrimental to the public health, morals, or safety, no matter how unwise the measure itself seems to individual judges, it is not for the judicial tribunals to nullify it upon constitutional grounds. If the legislation bears any reasonable relation to the public welfare and public morals the court may not declare it invalid. Unless there is a clear and palpable abuse of power, a court will not substitute its judgment for legislative discretion. Local authorities are presumed to be familiar with local conditions and to know the needs of the community. They are in a better position than the courts to judge the public need and must be allowed a considerable latitude of discretion."

Inspections conducted by the health department of the state or a municipality have been accepted as a valid exercise of the

police power and have not been considered an invasion of the constitutional rights of the occupant of the building inspected. 26 Ohio Jurisprudence (2d), 713, Section 42.

After giving due consideration to the rulings in the cited cases and the applicable principles of law, we are of the opinion that in the instant case the inspection is a routine matter; it is to be made during reasonable hours and is primarily for protective and not punitive purposes, and is in the interest of the general welfare. The inspection contemplated by the ordinance is not an ''unreasonable search'' within the meaning of the provision prohibiting ''unreasonable searches and seizures'' in Section 14 of Article I of the Ohio Constitution. The provision with respect to inspection is a valid exercise of the police power and does not violate the constitutional rights of the relator.

*Judgment reversed and cause remanded.*

HORNBECK, P. J., concurs.

CRAWFORD, J., dissenting. Those who framed the Fourth Amendment to the Constitution of the United States and those who adopted it almost verbatim in Section 14 of Article I of the Constitution of Ohio could hardly have intended to protect only those suspected of crime by requiring a warrant, while the ordinary citizen might still be compelled, at the risk of fine and imprisonment, to open his private dwelling at any hour of the day or night which a municipal housing inspector without a warrant might decide was ''reasonable.''

''To say that a man suspected of crime has a right to protection against search of his home without a warrant, but that a man not suspected of crime has no such protection, is a fantastic absurdity.'' *District of Columbia* v. *Little,* 178 F. (2d), 13, 17, 13 A. L. R. (2d), 954.

''There is no doctrine that search for garbage is reasonable while search for arms, stolen goods or gambling equipment is not.'' *Idem.* 16.

Section 14 of Article I of the Constitution of Ohio, like the Fourth Amendment to the federal Constitution, contains two separate and distinct clauses:

"The right of the people to be secure in their persons, houses, papers, and possessions, against unreasonable searches and seizures shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, particularly describing the place to be searched, and the person and things to be seized."

The first clause creates nothing new. It preserves an existing fundamental right. The second clause limits and circumscribes the one recognized exception to that right. The privilege claimed by the city would destroy the right, and nullify the first clause.

There can be no serious doubt that the true purpose of these constitutional provisions was not to shield the actual or suspected felon, but to keep inviolate the sacred right described at the beginning, "The right of the people to be secure in their persons, houses," etc. Any exception should be strictly construed. 10 Ohio Jurisprudence (2d), 138, Constitutional Law, Section 37.

"* * * to say that the specific prohibition of one threatened violation of a basic right thereby validates every other violation of that right is both illogical and unrealistic." *District of Columbia* v. *Little, supra* (178 F. [2d], 13), 19.

While the word, "inspection," as used in the ordinance is perhaps broader and potentially more objectionable than the word, "search," as found in the Constitution, we need not indulge in fine distinctions, inasmuch as interpretation should always be liberal in favor of the citizen. 10 Ohio Jurisprudence (2d), 137, Constitutional Law, Section 37.

It is complained that the requirement of a search warrant would be inconvenient and impractical for the purposes of housing inspection. The Constitution has often been found inconvenient. But if a search warrant is the only constitutional method provided whereby the city might pursue its purpose, it must either procure one upon demand or forego the "inspection." Relator was, therefore, entirely within his rights to refuse admittance to one without a warrant.

Lack of statutory authority for a search warrant for such an inspection certainly does not justify proceeding without one.

"It is untenable to argue that because Congress has failed to provide procedure for obtaining a search warrant, searches otherwise unconstitutional can therefore be made." *District of Columbia* v. *Little, supra* (178 F. [2d], 13), 20.

It is possible that the right in question may be subject to further definition and even to some reasonable limitation in the public interest, but if so, this can properly be accomplished only by the careful and regular processes of legislation and adjudication, and must not be entrusted to the personal views of an inspector.

In the *Little case,* at page 16, it is said:

"* * * except for the most urgent of necessities, the question of reasonableness is for a magistrate and not for the enforcement officer."

Under the present provisions of this ordinance the citizen must act at his peril. Either he must keep the doors of his dwelling open during all hours that the inspector thinks are reasonable or he must risk fine and imprisonment if his own judgment of the matter is in error. It is small comfort that in his trial as an accused defendant the court will then have a belated opportunity to pass upon the question and decide whether his conduct has been criminal.

Extensive as is the police power, and elastic as it must be to serve our developing economy, it is not absolute or unlimited. Measures enacted under it must still be reasonable, not only in their substantive provisions, but also in the means provided for their administration and enforcement. 10 Ohio Jurisprudence (2d), 454, 455, Constitutional Law, Sections 376, 377.

And they must not needlessly infringe private rights. 10 Ohio Jurisprudence (2d), 446, Constitutional Law, Section 371.

It is conceded that the question before us is new and controversial. The very lack of authority on the point is mute but eloquent testimony that not until recently have municipalities presumed to enter private dwellings in the manner and for the purpose here involved.

The case of *Richards* v. *City of Columbia,* 227 S. C., 538, 88 S. E. (2d), 683, furnishes no precedent, for the court there observed:

"* * * this question is not presented * * * because there has been no entrance of any premises by the director over the objection of the occupant."

In *Givner* v. *State,* 210 Md., 484, 124 A. (2d), 764, the right of entry was upheld, but in the absence of any comparable constitutional provision. And that court expressed doubt that the provisions of the Fourth Amendment against unreasonable searches and seizures could be regarded as limited to criminal prosecutions.

The only direct and authoritative decision on the question, that in *District of Columbia* v. *Little, supra* (178 F. [2d], 13), in the Court of Appeals for the District of Columbia, stands unreversed. It was affirmed by the United States Supreme Court on other grounds. 399 U. S., 1, 94 L. Ed., 599, 70 S. Ct., 468. Hence we cannot know whether a majority of the Supreme Court was inclined to agree or disagree with the court below on the constitutional question. But they did two significant things: They commented upon the grave importance of the question, and they declined to reverse.

The telling language of the majority of the Court of Appeals in the *Little case* seems grounded upon compelling logic.

That court also suggested that appropriate legislation might be devised to provide an adequate and appropriate method of inspection in the public interest without violating the rights of the individual citizen.

I apprehend that whenever a real public need is made apparent there will be few objectors, and that if those few were accorded a hearing with at least ultimate resort to the courts, no vital program would be seriously impeded, the most objectionable features of the ordinance would be removed, and even conflict with the Constitution might possibly be avoided.

But the burden now imposed by the ordinance upon the householder violates his constitutional right to be secure in his house; and its sweeping provisions for inspection exceed the police power of the municipality. For this two-fold reason the inspection and penal provisions of the ordinance are in my opinion unconstitutional and invalid.

The judgment of the trial court should be affirmed.