STERN ET AL., APPELLEES, *v.*
CITY OF CLEVELAND, APPELLANT, ET AL.
[Cite as Stern v. Cleveland (1979), 65 Ohio App. 2d 131.]

(No. 38753—Decided June 28, 1979.)

*Mr. Milt Schulman,* for appellees.
*Mr. Richard T. Andrews, III,* for appellant.

JACKSON, J.  Plaintiffs-appellees,[1] owners of real estate parcels in the city of Cleveland, brought this class action in the Court of Common Pleas of Cuyahoga County on behalf of themselves and all other owners similarly situated, alleging that the defendant-appellant, city of Cleveland, wrongfully assessed demolition liens against their properties for the cost of demolishing buildings previously located thereon.

---

[1] The following are appellees in this cause: Louis Stern; Superior-Uptown Investment Co., Inc.; Tower Development and Investment Co., Inc.; and Milt Schulman.

The facts are not disputed by the parties. The properties owned by appellees Tower Development and Milt Schulman are located within the University-Euclid General Neighborhood Renewal Plan (GNRP-32) adopted by the Cleveland City Council in 1961 (Ordinance No. 1338-61). The properties owned by appellees Louis Stern and Superior-Uptown Investment are located within the Glenville-Forest Hills Neighborhood Development Program (NDP) adopted by the Cleveland City Council in 1970 (Ordinance No. 955-69).

The buildings located on each of the parcels were demolished as public nuisances by the city. A lien was assessed by the city against each of the parcels for the cost of the demolition. The appellees argued in the lower court that their parcels are located in urban renewal areas and under provisions of R. C. 715.261 and Sections 5.0708 and 6.1308 of the Codified Ordinances of the City of Cleveland, the costs and expenses of demolition may not be assessed against such properties.

The case was submitted to the court below upon a stipulation of facts. The trial court subsequently rendered judgment in favor of the appellees.

The city filed a timely notice of appeal and assigns a single error for review:

"The trial court erred in holding that plaintiffs could not be assessed the costs of demolishing unsafe structures on their properties."

The provisions of R. C. 715.261 relating to recovery from the owner of a building of the costs of correcting a hazardous condition or abating a nuisance provide:

"The total cost, whether such costs are incurred due to the use of employees, materials, and equipment of the municipal corporation or by contract for labor, materials, and equipment, or both, of removing insecure, unsafe, or structurally defective buildings or other structures, regardless whether such removal is authorized under section 715.26 of the Revised Code or Section 3 of Article XVIII, Ohio Constitution, including the cost of service or publication of notice, together with a proper description of the premises, shall be certified by the clerk of the legislative authority of the municipal corporation to the county auditor and by him placed upon the tax duplicate. Such costs are a lien upon such lands from and after

the date of entry and shall be collected as other taxes and returned to the municipal corporation.

*"The cost of removing a building or other structure which is located within an area determined by the legislative authority of the municipal corporation to be an urban renewal area included within an urban renewal plan shall not be certified to the county auditor to be placed upon the tax duplicate."*[2] (Emphasis added.)

Moreover, Sections 5.0708 and 6.1308 of the Codified Ordinances of the City of Cleveland grant authority to the municipality to assess demolition liens for the removal of unsafe buildings except "***that this section shall not apply to the demolition of any dwelling *located within an area determined by council to be an urban renewal area."* (Emphasis added.)

The city argues that the assessments were lawful because the area in which each parcel is located is not an "urban renewal area" within the meaning of the ordinances.

Both the GNRP-32 and the NDP set forth general plans designating relatively large areas for urban renewal. Both plans also delineated smaller areas within each general plan for *active* project undertakings. The city maintains that except for these active project undertakings, the remaining inactive areas within each general plan are not "urban renewal areas" within the meaning of the city ordinances. We are not persuaded by this argument.

In a case involving the precise question now before this court, the Court of Common Pleas of Cuyahoga County held that the designation by a legislative body of an area as an "urban renewal area" or a "community development area" constitutes the taking of private property for a public use, "and the demolition of structures therein is for the public welfare." *Hough, Inc.,* v. *Cleveland* (1971), 31 Ohio Misc. 45, 48. The court went on to state that the demolition of a structure in an urban renewal area advances the general purpose of urban renewal and therefore the costs of such demolition should be borne by the governments involved and not the individual property owner.

---

[2] The emphasized portion of R. C. 715.261 was repealed in 1978. The former version of the statute is controlling in the disposition of the case at bar because the buildings in issue were demolished in 1967 and 1970.

It is not disputed in the case at bar that the parcels in question lie within the areas designated by the general renewal plans, although they are not within an area designated as an active project area. The city maintains that this distinction is dispositive of this case. However, neither the state statute (R. C. 715.261) nor Sections 5.0708 and 6.1308 of the Codified Ordinances of the City of Cleveland distinguish between active and inactive renewal areas; they only speak of "urban renewal areas" or an area included "within an urban renewal plan."

Moreover, it is clear from the Cleveland ordinances creating the GNRP-32 and NDP that these ordinances were enacted in accordance with the Federal Housing Act of 1949[3] for the express purpose of obtaining federal financial assistance for the undertakings. The Housing Act defines "urban renewal area" as "a slum area or a blighted, deteriorated, or deteriorating area in the locality involved which the Secretary [of H.U.D.] approves as appropriate for an urban renewal project." Section 1460(a), Title 42, U. S. Code. Therefore, before an area can be designated for urban renewal and become eligible for federal funding, the area must be determined to be blighted, deteriorated or deteriorating. The Cleveland ordinances creating the GNRP-32 and NDP both stated that the areas within the boundaries of the general renewal plans have been determined to be "blighted and deteriorated" or "deteriorating." This determination applied equally to the active and inactive project areas in the general plans.

In addition, the Housing Act defines "urban renewal projects" as "*undertakings and activities of a local public agency in an urban renewal area* for the elimination and for the prevention of the development or spread of slums and blight, and may involve slum clearance and redevelopment *in an urban renewal area,* or rehabilitation or conservation *in an urban renewal area* * * * in accordance with such urban renewal plan. * * *" (Emphasis added.) Section 1460(c), Title 42, U. S. Code. See, also, Section 1469(b), Title 42, U. S. Code, relating to "neighborhood development programs." Thus, the term "urban renewal area" is not restricted in the Housing Act to active project undertakings, but is used to include the entire area comprising the general urban renewal plan.

---

[3] Section 1441 *et seq.,* Title 42, U. S. Code.

We therefore conclude that the city wrongfully assessed demolition liens against appellees' properties which are located in an "urban renewal area" within the meaning of the pertinent ordinances.

Accordingly, we affirm the judgment of the trial court.

*Judgment affirmed.*

PARRINO, C. J., and PATTON, J., concur.