ENGLEWOOD, Appellee,

v.

TURNER, Appellant.

[Cite as *Englewood v. Turner*, 178 Ohio App.3d 179, 2008-Ohio-4637.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 22270.

Decided Sept. 12, 2008.

180

Micheal P. McNamee, Cynthia P. McNamee, and Gregory B. O'Connor, for appellee.

Konrad Kuczak, for appellant.

WALTERS, Judge.

{¶ 1} Defendant-appellant, Stella Turner, appeals the judgment of the Montgomery County Common Pleas Court granting the defendant's, city of Englewood's, motion to dismiss and denying her motion to amend her complaint. Turner claims that the trial court erred because the claims she sought to include were not mooted by the city's demolition of her building. Because we find that the action was not moot after the demolition and that the trial court erred in overruling her motion to amend, we reverse the judgment of the trial court.

{¶ 2} The city of Englewood's housing officer sent a notice of violation to Turner in early July 2003, alleging a nuisance at her property located at 20 North Union Boulevard, Englewood, Ohio. Englewood's City Council passed an abatement resolution regarding the property later that month and filed suit against Turner in October 2003, seeking abatement of the alleged nuisance.

{¶ 3} In December 2004, the trial court concluded that Englewood's motion for summary judgment should be granted in the nuisance-abatement action. This decision was based on Turner's failure to appeal the order of the Englewood City Council. According to the court, this failure "relieved Englewood of the obligation of independently proving the existence of the nuisance conditions described in" the abatement resolution passed by the City Council on July 22, 2003. The court, therefore, ordered Turner to abate the nuisance within 30 days. If Turner failed to do so, the court ordered that Englewood could move to hold Turner in contempt and submit evidence as to the costs associated in abating and repairing the defendant's property.

{¶ 4} Turner objected to the magistrate's decision and also filed notices of appeal with the Englewood City Council, notifying Englewood of her intent to appeal the abatement resolution that was enacted in July 2003. Turner also filed a separate action in the trial court, appealing the enactment of the resolution and requesting declaratory and injunctive relief. Englewood moved for summary judgment on Turner's complaint.

{¶ 5} The trial court consolidated the two actions, and on August 11, 2005, it overruled Turner's objections to the magistrate's decision and granted Englewood's motion for summary judgment on the appeal of the abatement resolution. Turner appealed those decisions to this court.

{¶ 6} In September 2005, Englewood notified Turner of its intent to demolish the existing structures on her property within 30 days. Turner sought a stay of execution, which the trial court granted, contingent on Turner's posting a $75,000 supersedeas bond. The amount of the bond was based on Englewood's alleged potential loss of a $75,000 Community Development Block Grant that Englewood intended to use to finance demolition costs. Subsequently, on September 29, 2005, Turner applied to our court for an order modifying the amount of the supersedeas bond. We denied the motion in October 2005, stating that we could not conclude that the trial court had abused its discretion in ordering the bond. Following the denial, the appeal proceeded. Turner did not post bond, and Englewood began demolition of the structures on the property in December 2005. The demolition was completed by the beginning of January 2006, but this court was not advised of that fact.

{¶ 7} In May 2006, we reversed the trial court's summary judgment in favor of Englewood. See *Englewood v. Turner*, 168 Ohio App.3d 41, 2006-Ohio-2667, 858 N.E.2d 431 (*"Turner I"*). Turner presented five assignments of error on appeal, but we addressed only the first and fourth assignments of error because they were dispositive. The First Assignment of Error alleged, "Englewood's nuisance abatement procedures did not satisfy fundamental due process requirements, [and] the judgment of the trial court enforcing same is thus contrary to law." *Turner I* at ¶ 7. The Fourth Assignment of Error alleged, "Mrs. Turner did not fail to exhaust administrative remedies; the trial court committed prejudicial error by so finding; the filing of her administrative notice of appeal on January 19, 2005 was timely." Id. at ¶ 10.

{¶ 8} We concluded that Turner did not fail to exhaust administrative remedies because there were no administrative remedies that provided notice, a hearing, and an opportunity to present evidence regarding either the July 8, 2003 notice sent to Turner by Englewood's housing officer or the abatement resolution passed by the city council on July 22, 2003. Id. at ¶ 12–18. Accordingly, we reversed the trial court's grant of summary judgment and remanded the matter

for further proceedings. Our decision, therefore, required Englewood to prove the existence of the nuisance conditions described in the abatement resolution because the magistrate's decision relieved Englewood of this obligation and had rendered summary judgment against Turner solely on that procedural basis.

{¶ 9} Englewood filed a motion for reconsideration of our decision, contending that the issues on appeal were moot, based on the demolition. We rejected the motion on two grounds. First, the motion was untimely, and Englewood, knowing of the demolition and potential mootness issues since January 2006, failed to present extraordinary circumstances that would permit enlargement of the time for filing the motion.

{¶ 10} As an additional matter, we noted that our decision reversed the summary judgment that had been granted. We concluded that Englewood could raise the mootness issue in the trial court.

{¶ 11} On remand, Turner requested leave to file a second amended complaint to add a claim for compensation for the taking of her property. Turner also wished to challenge the validity of a $63,991.15 lien attached to her property for demolition expenses. The trial court denied the motion in June 2007, concluding that the issues in the case were moot since Turner failed to post the required supersedeas bond and the fact that the structures on the property had already been demolished. The trial court then dismissed the case in July 2006, based on its conclusion that the judgment had been satisfied and that any claims raised by Turner were moot. Turner appeals from the dismissal, asserting a single assignment of error for our consideration.

## Assignment of Error

{¶ 12} "The trial court abused its discretion by refusing to allow Mrs. Turner to amended [sic] complaints."

{¶ 13} In her assignment of error, Turner contends that the trial court abused its discretion because demolition of the building did not satisfy the original judgment. Specifically, the original judgment required Turner only to abate the "nuisance." The judgment further provided that if Turner failed to abate the nuisance, Englewood could move the court for a contempt finding against Turner and submit evidence as to the costs associated in abating and repairing the property. According to Turner, Englewood was authorized only to move for a contempt finding and submit evidence of costs for "abating and repairing," not to demolish the building. Englewood contends that Turner is barred from recovery because Turner failed to post the required supersedeas bond that would have stayed demolition.

{¶ 14} In *Solly v. Toledo* (1966), 7 Ohio St.2d 16, 36 O.O.2d 9, 218 N.E.2d 463, the Ohio Supreme Court held:

{¶ 15} "3. Anyone who destroys or injures private property in abating what legislative or administrative officials have determined to be a public nuisance does so at his peril, where there has been neither a previous judicial determination that such supposed nuisance is a public nuisance nor even an opportunity provided to the owner for an administrative hearing (with a judicial review thereof) on the question as to whether there is a public nuisance.

{¶ 16} "4. In such an instance, when sued by the owner, the one destroying the property may be held liable for damages caused by its destruction unless he alleges and proves and the trier of the facts finds that what he destroyed was a public nuisance and that its destruction was reasonably necessary for abatement of that nuisance.

{¶ 17} "5. The owner of property is under no duty to bring an action to enjoin its threatened wrongful destruction, and failure to do so will not prevent recovery for damages caused by such destruction." Id. at paragraphs three, four, and five of the syllabus.

{¶ 18} Since *Solly* was decided, the Ohio Supreme Court has neither overruled nor limited the syllabus. Pursuant to paragraph five of the syllabus, Turner would not be precluded by the demolition from bringing an action in damages for wrongful demolition, even though she failed to post a supersedeas bond. *Solly* clearly indicates that a property owner is not barred from suit by failing to bring an action to enjoin threatened wrongful destruction. The same reasoning would indicate that failure to obtain a stay would not preclude a claim or counterclaim for wrongful demolition.

{¶ 19} If Turner's suit is not automatically barred by mootness, the issue becomes whether Englewood can be held liable. If Englewood cannot be held liable for other reasons, we may still affirm the trial court. *Reynolds v. Budzik* (1999), 134 Ohio App.3d 844, 846, 732 N.E.2d 485, fn. 3 ("[W]hen a trial court has stated an erroneous basis for its judgment, an appellate court must affirm the judgment if it is legally correct on other grounds, that is, it achieves the right result for the wrong reason, because such an error is not prejudicial").

{¶ 20} In the proposed second amended complaint, Turner asserted claims against Englewood; Karl Keith, the Montgomery County Auditor; and Hugh Quill, the Montgomery County Treasurer. Keith and Quill were sued for injunctive relief only, because Turner wanted the trial court to order Keith to strike the lien from the tax duplicate. Turner also wanted the trial court to enjoin Quill from collecting the lien.

{¶ 21} The claims against Englewood alleged a "taking" without due process, and unjust enrichment. The latter claim was based on Englewood's prior representation that demolition expenses were to be paid by a Community

Development Block Grant. Turner contended that unless Englewood had perpetrated a fraud on the court, it would be unjustly enriched if it were also allowed to collect the lien amount from Turner.

{¶ 22} If Turner's claim were construed as an attempt to recover for wrongful demolition, it would be considered a tort and could be precluded under the sovereign immunity granted to political subdivisions in R.C. Chapter 2744. While *Solly* indicated that property owners might pursue damage claims against municipalities for wrongful demolition, *Solly* was decided before R.C. Chapter 2744 was adopted in 1989. The Ohio Supreme Court also noted in *Solly* that the city of Toledo did not raise the defense of governmental immunity. As a result, *Solly* is not controlling on the issue of recovery for wrongful demolition. *Monesky v. Wadsworth* (Apr. 3, 1996), Medina App. No. 2478–M, 1996 WL 148655.

{¶ 23} After R.C. Chapter 2744 was adopted, courts generally refused to allow recovery in tort for wrongful demolition against political subdivisions. See, e.g., *Monesky,* supra; *Bram v. Cleveland* (1993), 97 Ohio App.3d 718, 722–723, 647 N.E.2d 523, and *Stanton v. Cleveland,* Cuyahoga App. No. 82614, 2003-Ohio-6618, 2003 WL 22922331, at ¶ 30. However, there is an immunity exception in R.C. 2744.09(E) for civil claims "based upon alleged violations of the constitution or statutes of the United States." Thus, recovery has been permitted in situations involving claims for "taking" of property without due process of law. *Holtz v. Toledo,* Lucas App. No. L–05–1217, 2006-Ohio-3390, 2006 WL 1793684, at ¶ 41–43 (reversing a trial court judgment for the city on the basis that genuine issues of material fact existed regarding whether a notice reasonably conveyed the city's intent to demolish a structure).

{¶ 24} In *State v. Penrod* (1992), 81 Ohio App.3d 654, 662, 611 N.E.2d 996, the Fourth District Court of Appeals observed:

{¶ 25} "Provisions in both Section 19, Article I, Ohio Constitution, and the Fifth Amendment to the United States Constitution prohibit the taking of private property for public use except upon payment of just compensation. In Ohio, a just compensation includes interest on the amount of the appropriation judgment or award. It does not follow, however, that such compensation is mandated every time there is an impairment of an owner's full use of property.

{¶ 26} "The constitutional requirements to make compensation are directed toward the state's use of its eminent domain powers." (Citations omitted.) "Eminent domain is the power of the state to take private property for a necessary public use, without the owner's consent, upon payment of just compensation." Id. at fn. 8.

{¶ 27} The deprivation in *Penrod* resulted from forfeiture, which involved the use of the state's police powers. Id. at 662, 611 N.E.2d 996. The Fourth District distinguished police powers from eminent domain, noting:

{¶ 28} "[T]he state's police power is entirely separate and distinct from its sovereign power of eminent domain. Recognizing the distinction between the police and eminent domain powers, the Supreme Court has long held that laws enacted in the proper exercise of the police power, even though they result in the impairment of the full use of property by the owner thereof, do not constitute a 'taking of private property' requiring compensation." (Citations omitted.) Id. at 662–63, 611 N.E.2d 996.

{¶ 29} However, *Penrod* also noted the following limitation on police power, stressing that "notwithstanding its extensive character, the state's police power cannot be exercised arbitrarily or unreasonably to affect, or unduly interfere with, personal rights or private property. Any unreasonable or arbitrary exercise of the state's police power may rise to the level of a compensable taking under Section 19, Article I, Ohio Constitution." Id. at 663–664, 611 N.E.2d 996, citing *Grieb v. Dept. of Liquor Control* (1950), 153 Ohio St. 77, 81–82, 41 O.O. 148, 90 N.E.2d 691.

{¶ 30} In *Grieb*, the Ohio Supreme Court invalidated sections of the General Code that allowed the Department of Liquor Control to summarily seize and destroy alcoholic beverages without compensation to the owner, because the statutes allowed an unconstitutional taking without due process. The court, therefore, affirmed a judgment ordering return of the liquor to the plaintiff or allowing him to recover the full value. Id. at 79, 41 O.O. 148, 90 N.E.2d 691. In addition to noting that the state could not exercise its police power arbitrarily, the court stressed, "Due process of law as guaranteed by the federal and state constitutions requires 'some legal procedure in which the person proceeded against if he is to be concluded thereby, shall have an opportunity to defend himself.'" *Grieb*, 153 Ohio St. at 81, 41 O.O. 148, 90 N.E.2d 691, quoting *State ex rel. Hoel v. Brown* (1922), 105 Ohio St. 479, 486, 138 N.E. 230.

{¶ 31} Accordingly, even if police powers are involved, recovery for a taking is still possible. This type of claim was presented in *Cleveland v. W.E. Davis Co.* (July 18, 1996), Cuyahoga App. No. 69915, 1996 WL 403337. In *W.E. Davis*, a property owner was given notice of a condemnation in 1990, but failed to appeal the order to the Board of Building Standards and Appeals. Following a fire in 1993, the fire department requested the city's help in removing part of the structure that represented a hazard. The property owner was notified that the city intended to proceed with demolition, but again, the owner failed to file an administrative appeal or take other action to prevent demolition.

{¶ 32} When the city subsequently filed an action to recover demolition costs, the trial court granted summary judgment for the city and also rejected the property owner's counterclaim for unlawful taking, conversion, and waste. Id. The Eighth District Court of Appeals affirmed, holding that the property owner had failed to exhaust administrative remedies. Id. With regard to the "takings" claim, the Eighth District noted:

{¶ 33} "[I]t is well settled that municipal ordinances enacted pursuant to R.C. 715.26 are a valid exercise of police power. See *State ex rel. Eaton v. Price* (1957), 105 Ohio App. 376, 388 [6 O.O.2d 153, 152 N.E.2d 776]. Accordingly, Davis's taking claim does not invoke the constitutional requirements of just compensation.

{¶ 34} "We hasten to add, however, that where a city has failed to provide a property owner with an opportunity for hearing or appeal prior to the razing of property, the city has denied the owner due process of law. See *Superior Sav. Assn. v. Cleveland* (N.D.Ohio 1980), 501 F.Supp. 1244, 1250; *Bancplus Mortgage Corp. v. Cleveland* (Dec. 29, 1992), Cuyahoga C.P. No. 167189, unreported, aff'd. (June 9, 1994), Cuyahoga App. No. 65011 [1994 WL 258644], unreported. In such instance, there is no immunity under R.C. Chapter 2744. See R.C. 2744.09(E). In addition, the city will be precluded from receiving its demolition costs. *Bancplus*, supra." *W.E. Davis*, Cuyahoga App. No. 69915, 1996 WL 403337.

{¶ 35} Based on the facts presented in *W.E. Davis*, the Eighth District held that summary judgment was appropriately granted. The court noted that there was no genuine dispute about the property owner's opportunities to be heard prior to the demolition of the property. Id. The court also noted that the property owner failed to assert a constitutional claim.

{¶ 36} In contrast to *W.E. Davis*, there was a factual dispute in *Holtz*. There, the Sixth District Court of Appeals found genuine issues of material fact regarding whether the city of Toledo's demolition notice reasonably conveyed intent to demolish a structure. *Holtz*, 2006-Ohio-3390, 2006 WL 1793684, at ¶ 41–43. The property owner in *Holtz* also raised a constitutional claim. Id. at ¶ 31.

{¶ 37} Our original decision in the present case held that Turner was not afforded proper administrative remedies regarding abatement of the nuisance. *Turner I* at ¶ 12–18. Turner also attempted to raise a constitutional claim at the trial court level. In responding to these facts, Englewood argues that Turner had an opportunity to be heard, but failed to post the bond that would have prevented demolition. However, this argument has a number of flaws. In the first place, the trial court's judgment on the nuisance abatement issue did not expressly authorize Englewood to demolish the property. As we noted, the decision gave Turner 30 days to abate the nuisance. The decision then provided that if Turner failed to abate the nuisance, Englewood could move the court for

an order of contempt and submit evidence as to the costs associated in "abating and repairing" the property. Englewood never moved the court for an order of contempt, nor did Englewood submit evidence as to the costs associated with abatement and repair. Instead, Englewood simply sent Turner a "courtesy" letter announcing its intent to demolish her building.

{¶ 38} Furthermore, the trial court's decision contemplates abatement and repair; it says nothing about demolition. According to the Ohio Supreme Court, an abatement action is " 'a summary proceeding more in the nature of a suit in equity.' " *State ex rel. Miller v. Anthony* (1995), 72 Ohio St.3d 132, 136, 647 N.E.2d 1368, quoting *Cameron v. United States* (1893), 148 U.S. 301, 304, 13 S.Ct. 595, 37 L.Ed. 459. *State ex rel. Miller* also noted that "[a]ll property owners are obligated to use their property in a manner that will not injure the community at large" and that "[t]he legislature may exercise its police power by authorizing the proper authorities to grant injunctions in order to prevent certain persons from allowing their property to pose a continuing detriment to public safety." Id. at 136, 647 N.E.2d 1368.

{¶ 39} A preventive injunction is different in kind from an order granting demolition. In *Holtz,* the Sixth District Court of Appeals rejected the contention that "abate" means demolish and destroy. That court commented that "[d]emolition and destruction are not synonyms that immediately leap to mind when the term 'abate' is used." Id. at ¶ 43. To "abate" means "to put an end to, to nullify or to become void." *Lollis v. Mihm* (Sept. 3, 1993), Montgomery App. No. 13880, 1993 WL 333646. Demolition is one method of putting an end to a nuisance. However, the decision in the present case refers to "abating and repairing the property" in the conjunctive. It does not refer to "abating or repairing," nor does it say anything about demolishing the property.

{¶ 40} "Repair" is defined as " '[t]o mend, remedy, restore, renovate. To restore to a sound or good state after decay, injury, dilapidation, or partial destruction.' " *Ditmyer v. Lucas Cty. Bd. of Commrs.* (1980), 64 Ohio St.2d 146, 148, 18 O.O.3d 372, 413 N.E.2d 829, quoting Black's Law Dictionary (5th Ed.). In contrast, "demolish" is defined as "to pull or tear down (as in a building): raze," or "to break to pieces or apart, usu. with force or violence: ruin completely." Webster's Third New International Dictionary (1981) 600. Because the terms demolish and repair are inherently contradictory, we cannot conclude, as a matter of law, that the trial court ordered demolition. At the very least, there is a factual issue about what the decision means.

{¶ 41} Englewood argues that we should follow *Hagood v. Gail* (1995), 105 Ohio App.3d 780, 664 N.E.2d 1373, which holds that an appeal is mooted when a property owner fails to seek a valid stay order before satisfying a judgment.

Englewood also relies on *Blodgett v. Blodgett* (1990), 49 Ohio St.3d 243, 246, 551 N.E.2d 1249, in which the Ohio Supreme Court held that a wife's execution of a satisfaction of judgment in a divorce case terminated her appeal, despite her claims of economic duress.

{¶ 42} We have previously distinguished both *Blodgett* and *Hagood* in holding that a foreclosure appeal was not moot, despite the property owners' failure to post a supersedeas bond to prevent the sale of the property. *Chase Manhattan Mtg. Corp. v. Locker*, Montgomery App. No. 19904, 2003-Ohio-6665, 2003 WL 22927244. In *Chase*, the mortgagee filed a motion to dismiss the appeal, because the property had been sold during the appeal, the proceeds had been distributed, and any deficiency judgment had been waived. Id. at ¶ 33–34. As in the present case, the mortgagee contended, based on *Blodgett* and *Hagood*, that the property owners could have prevented the sale by posting the required supersedeas bond and that their appeal was moot because they had voluntarily satisfied the judgment. Id. at ¶ 35. We disagreed, noting:

{¶ 43} "*Blodgett* is not controlling. *Blodgett* was not a foreclosure action; instead, it was a divorce case in which the appellant accepted the full amount of a marital award and signed a satisfaction of judgment. Likewise, in *Hagood*, the appellant accepted the full amount of a money judgment in her favor ($560,000)." (Citations omitted.) Id. at ¶ 43.

{¶ 44} We further observed that, unlike *Blodgett* and *Hagood*, the foreclosure case did not involve a "contract or agreement that a judgment has been satisfied or settled." Id. at ¶ 41. We stressed that while this distinction should itself dispose of the matter, we had also "previously construed *Blodgett* as establishing a narrow definition of 'involuntariness.'" Id., citing *Poppa Builders, Inc. v. Campbell* (1997), 118 Ohio App.3d 251, 254–255, 692 N.E.2d 647. Consequently, even if we concluded in the present case that the trial court actually ordered demolition, the judgment was not voluntarily satisfied.

{¶ 45} As an additional matter, we note that Englewood apparently failed to follow its own procedures for initiating demolition.[1] Englewood Ohio Code of General Ordinances, Section 1454.09 states:

{¶ 46} "(a) Determination and Notice of Violation. When the Housing Officer determines that a premises within the City constitutes a public nuisance as defined in Section 1454.04, a standard notice of violation will be sent to an owner.

---

1. We say "apparently" because the Englewood City Ordinances were amended in December 2004. Because administrative remedies were not available when the violation notice was issued in 2003, this section may have been substantially revised. Nonetheless, the revised ordinance would have been in effect when the property was demolished in January 2005. This is a factual matter that should be explored on remand.

A demolition notice of violation will be sent to all interested parties as determined by title search.

{¶ 47} "(b) Contents of a Demolition Notice of Violation. The demolition notice of violation shall: describe with reasonable particularity the premises deemed to be a nuisance; describe the conditions constituting the public nuisance; specify that an owner has thirty days within which to either fully and completely abate the nuisance via demolition or work out a schedule, satisfactory to the City, for the demolition, with sufficient surety acceptable to the City to guarantee timely completion of the abatement according to schedule; and inform the interested parties of the date and time of the pre-scheduled adjudicatory hearing date before the Board. The hearing date shall be set no less than thirty days after the date of the demolition notice of violation. The Board shall affirm, reverse, or modify the determinations made by the Housing Officer in the demolition notice of violation, including the existence of the nuisance and the demolition remedy deemed necessary by the Housing Officer, in accordance with Section 1454.18. For purposes of this subsection, 'sufficient surety acceptable to the City to guarantee completion on schedule' affords the City the sole discretion to select the necessary surety, which may include but not be limited to a cash bond or letter of credit."

{¶ 48} Instead of sending a demolition notice complying with these require-ments, Englewood's attorney sent Turner's attorney a "courtesy" letter in September 2005, indicating that the city intended to proceed to demolish the existing structures on Turner's land within 30 days. None of the matters outlined in Section 1454.09 were mentioned, other than the fact that Englewood intended to demolish the property described as 20 North Union Road.

{¶ 49} In view of the above discussion, we conclude that the trial court should have permitted Turner to amend her complaint to raise constitutional claims for a "taking" of property without due process. Civ.R. 15(A) indicates that leave of court shall be "freely given" for amendment of pleadings. "The grant or denial of leave to amend a pleading is discretionary and will not be reversed absent an abuse of discretion. An abuse of discretion connotes a decision that is unreasonable, arbitrary or unconscionable." (Citations omitted.) *State ex rel. Askew v. Goldhart* (1996), 75 Ohio St.3d 608, 610, 665 N.E.2d 200. Furthermore, while Civ.R. 15 allows for liberal amendment, courts may deny motions to amend when there is a showing of bad faith, undue delay, or undue prejudice to the opposing party. *Turner v. Cent. Local School Dist.* (1999), 85 Ohio St.3d 95, 99, 706 N.E.2d 1261.

{¶ 50} In the present case, the trial court did not indicate that its denial was based on factors like bad faith, undue delay, or prejudice. Instead, the court

concluded that the case was moot due to the demolition of the building. Because that conclusion was erroneous, the denial of amendment was consequently unsupported by a sound reasoning process and was therefore an abuse of discretion. See *Schafer v. RMS Realty* (2000), 138 Ohio App.3d 244, 300, 741 N.E.2d 155, citing *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.* (1990), 50 Ohio St.3d 157, 161, 553 N.E.2d 597 ("Decisions are unreasonable if they are not supported by a sound reasoning process").

{¶ 51} In *Jackson v. Columbus* (1974), 41 Ohio App.2d 90, 70 O.O.2d 92, 322 N.E.2d 283, the Tenth District Court of Appeals noted:

{¶ 52} "[T]he one who has destroyed the property under a claim of right, in order to abate a public nuisance, must allege and prove 'that what he destroyed was a public nuisance and that its destruction was reasonably necessary for abatement of that nuisance.' In other words, the burden was upon defendant to allege and prove that it was justified in destroying plaintiff's property. The burden was not upon plaintiff to prove that defendant was not justified in destroying his property.

{¶ 53} "There are two aspects to this burden of proof. One is that the property was a public nuisance. * * * However, in addition, it must be alleged and proved that the destruction of the property was reasonably necessary to effectuate the abatement of the nuisance. If means short of destruction would abate the nuisance, such must be employed." (Citations omitted.) Id. at 96, 70 O.O.2d 92, 322 N.E.2d 283.

{¶ 54} In the present case, there has never been a judicial determination of a public nuisance, nor did Turner have an opportunity to be heard at an administrative level with a judicial review of whether a public nuisance existed. Accordingly, the trial court should have permitted Turner to amend her complaint to raise a takings claim.[2]

{¶ 55} Turner was also entitled to dispute the lien that was placed on her property by filing a request for declaratory judgment that she was not liable for the demolition costs. R.C. 715.261(B)(1) allows municipalities to certify the costs of removing or repairing buildings to the county auditor, who then places the costs on the tax duplicate. The certified costs are a lien on the land after entry

---

2. We have held that a mandamus action must be filed in order to pursue damages for property demolition. *Palco Invest., Inc. v. Springfield,* Clark App. No. 2004–CA–80, 2005-Ohio-6838, 2005 WL 3502142, at ¶ 23. However, that statement was made in the context of an administrative appeal under R.C. 2506.04 which authorizes common pleas courts only to affirm, reverse, vacate, or modify an agency's decision. Id. In contrast, the present action was initiated by Englewood, and Turner attempted to file a counterclaim for unlawful taking, which is permitted by R.C. 2744.09(E). Turner's counterclaim cannot be construed as having been brought pursuant to R.C. 2506.04 because Englewood failed to provide an administrative process. *Englewood,* 168 Ohio App.3d 41, 2006-Ohio-2667, 858 N.E.2d 431, at ¶ 12–18.

and may be collected like other taxes. However, courts have permitted landowners to challenge the lien. See *Stern v. Cleveland* (1979), 65 Ohio App.2d 131, 132, 19 O.O.3d 78, 416 N.E.2d 636 (landowner contests demolition lien because the parcels in question were located in an urban renewal area); *Radvanski v. Steubenville* (Mar. 14, 1978), Jefferson App. No. 1273, 1978 WL 214882 (certified liens were held invalid because the city wrongfully demolished the buildings); *Dayton v. Caslin* (1990), 68 Ohio App.3d 312, 314, 588 N.E.2d 250 (city filed complaint for costs of demolishing structures, and defendant counterclaimed for declaratory judgment that he was not liable to the city); and *Lebanon v. McClure* (Oct. 15, 1990), Warren App. No. CA89–11–065, 1990 WL 154023 (rejecting a challenge to the constitutionality of R.C. 715.261 as premature because the city had not yet incurred costs for repair. The court also held, however, that repair costs must be reasonable).

{¶ 56} Accordingly, Turner should have been permitted to amend her complaint and seek a declaratory judgment that the lien filed under R.C. 715.261 is invalid.

{¶ 57} Turner's assignment of error is sustained. The judgment of the trial court is reversed, and this case is remanded for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

FAIN and GRADY, JJ., concur.

SUMNER E. WALTERS, J., retired, of the Third District Court of Appeals, sitting by assignment.