**FEDERAL LAND BANK OF LOUISVILLE, Appellee,**

v.

**WILCOX et al., Appellants.**

[Cite as *Federal Land Bank of Louisville v. Wilcox* (1991), 74 Ohio App.3d 474.]

Court of Appeals of Ohio,
Pickaway County.

No. 90 CA 04.

Decided June 7, 1991.

*John E. Bowers,* for appellee.
*Charles W. Ewing,* for appellants.

GREY, Judge.

This is an appeal from an entry of summary judgment granted to the Federal Land Bank of Louisville ("the bank") against appellants Kenneth R., Robert W. and Arlene Gregory. We reverse.

Originally appellants borrowed money from the bank and pledged as security a mortgage on a certain piece of property. Appellants later sold that property to James L. and Yvonne C. Wilcox. The Wilcoxes allowed a second mortgage to be taken against the property by the Columbus Production Credit Association ("the association"). Some time later the bank and the association merged, forming Farm Credit Services.

On July 5, 1985 the bank filed a complaint for a judgment on the promissory note and for foreclosure on the mortgage securing that note. While the bank's complaint was pending, the real estate was part of a receivership as a

result of the Wilcoxes' domestic relations action. The real estate was then subject to a bankruptcy proceeding and sold at sheriff's sale on June 14, 1988.

The proceeds of the sale were not sufficient to pay the amount due on the original note between the bank and appellants. On January 18, 1989 the bank filed a motion for summary judgment in the original action, requesting the balance remaining on the note.

Appellants filed a memorandum contra to the bank's motion and also filed requests for production of documents, interrogatories and notices of depositions. The bank filed a motion for a protective order with the court.

The trial court filed an opinion on December 22, 1989, granting the bank summary judgment in the amount of $28,481.48 plus interest. The opinion also granted the bank's motion for a protective order from answering the appellants' request for production of documents or the interrogatories, but indicated that the court would consider additional requests for discovery. The summary judgment and the protective order were journalized in separate entries filed on January 5, 1990.

The Gregorys appeal and assign two errors.

■ We note that after this appeal was filed the bank filed a motion to dismiss because the appeal is moot. The bank asserts that appellants have satisfied the judgment in full and thus, the matter should be dismissed as moot. This court treated this matter most recently in *Arledge v. Braun* (Nov. 17, 1989), Ross App. No. 1528, unreported, 1989 WL 145620. In *Arledge,* we noted that a party may indicate his intention to voluntarily abandon his appeal, for example, by accepting the benefits of the judgment, but that payment of a judgment without more is not sufficient to automatically dismiss an appeal.

The dissenting opinion makes a good point in noting that the Supreme Court of Ohio has consistently held that where a judgment is voluntarily paid, the payment puts an end to the controversy. The problem, of course, is with the meaning of "voluntary" as used by the court. In its ordinary sense the word means, per Webster's Third Collegiate Dictionary, "proceeding from the will, or from one's own choice or full consent, * * * freely done or given * * *." To that extent, no judgment is ever literally voluntarily paid because if the defendant freely wanted to pay the plaintiff, there never would have been a lawsuit.

"Voluntary" is also used, however, to include situations where a person freely chooses between unattractive alternatives, for example, voluntarily paying taxes or, as was common with young men years ago, volunteering to be drafted. As the Supreme Court said in *Blodgett v. Blodgett* (1990), 49 Ohio

St.3d 243, 246, 551 N.E.2d 1249, 1251, "Almost every settlement agreement contains some modicum of coercion or duress."

In *Lynch v. Lakewood City Bd. of Edn.* (1927), 116 Ohio St. 361, 156 N.E. 188, the Supreme Court held that if a judgment is voluntarily paid, "* * * such payment puts an end to the controversy, and takes away from the defendant the right to appeal * * *." *Id.* at paragraph three of the syllabus. In *Rauch v. Noble* (1959), 169 Ohio St. 314, 8 O.O.2d 315, 159 N.E.2d 451, the court followed and quoted from *Lynch.* If taken too literally, *Lynch* and *Rauch* would seem to indicate that the Supreme Court intended to establish an anomalous legal principle such as "compliance with the trial court's order is grounds for denying the defendant his right to appeal," or perhaps, "a defendant will be denied the right to appeal unless he puts the plaintiff and trial court through the time and expense of an execution procedure." We cannot think the Supreme Court of Ohio intended such a result.

We think the decisions in *Lynch* and *Rauch* were merely two of a long line of cases where the court has held that it will not give advisory opinions. If the controversy has ended, the case is moot, and payment may be proof that the controversy has ended.

In *Lynch,* a principal sued for money he thought the school board owed him. When the case went against the board, it paid Lynch, but requested the Attorney General to proceed with an appeal, obviously seeking to establish some law on the issue. In a similar vein, in *Rauch,* the Director of Highways attempted the same thing, *i.e.,* to pay off the landowner yet still continue the case.

It may well be that the minority opinion is right and that the Supreme Court intends that any payment of a judgment constitutes a voluntary abandonment of the appeal as an irrefutable matter of law. We can see no reason for construing the court's holdings that way. One can easily presume several reasons why a defendant may prefer to pay a judgment rather than seek a stay or await execution. Commercial interest might be cheaper than legal interest. A judgment lien filed in a county attaches to all real property in that county and makes all of it unmarketable, or at least not mortgageable. In these days of the credit crunch, a defendant may prefer to pay a judgment rather than have to answer "yes" to the standard credit and employment application form question: Do you have outstanding judgments against you? The decision in *Kelm v. Hess* (1983), 8 Ohio App.3d 448, 8 OBR 572, 457 N.E.2d 911, which suggests that a stay and bond are just as good, misses this point entirely.

We may be absolutely wrong, but believe we are in accord with *Lynch* and *Rauch, supra,* because a rule that payment *ipso facto* constitutes abandon-

ment of the right to appeal would benefit nobody. It will not cut down on appeals because counsel will prevent clients from paying judgments and always move for a stay. It does not benefit the trial courts, because it adds the extra step of execution or stay which the defendant must resort to even if he would pay the judgment now. It does not benefit the defendant who ordinarily would seek a stay, and who would pay the judgment before the appeal was decided only if he had a very good reason for doing so. Finally, it does not benefit the plaintiff who won at trial, and who one way or another must wait to collect on his judgment. We feel confident we are on solid ground in holding that the Supreme Court did not intend to adopt a rule which benefits nobody.

To be sure, payment of a judgment may constitute proof of mootness or abandonment of the appeal and may be grounds for a motion to dismiss. The motion to dismiss in this case, however, is based on the ground that payment alone results in an automatic dismissal as a matter of law. We hold that it does not, without other proof that payment constitutes a voluntary abandonment, or that payment makes the issue moot. The motion to dismiss is overruled.

### Assignment of Error No. 1

"The court erred when it granted summary judgment for the plaintiff based on the facts and issue and before allowing discovery by the defendants with information contained in plaintiffs' file."

■ The appellants assert that the trial court should not have granted summary judgment until discovery was completed. We agree.

The trial court, specifically by the language in its opinion, stated that " * * * the Court will grant the plaintiff's motion for protective order from answering the interrogatories and the request for production of documents filed November 13, 1989. *If there are additional interrogatories that are to be filed more specifically pinpointing matters which have not been previously furnished to the defendant, as well as specifically setting forth the production of documents as to certain matters which have not been furnished to the defendant, then the Court would consider that when the matter is brought to the attention of the Court.*" (Emphasis added.)

It is clear from the court's language above that it did not consider discovery to be completed. Thus, the court should not have granted summary judgment until such time as discovery was completed, and erred in doing so. The Gregorys' first assignment of error is well taken and is sustained.

Assignment of Error No. 2

"The court erred when it granted the motion for protective order denying defendants the opportunity to depose plaintiffs' representative, examine plaintiffs' files, and have plaintiff respond to questions posed through interrogatories to plaintiff."

■ Appellants assert that the trial court denied them the opportunity for discovery. However, we find that the court did not bar discovery entirely, but merely required that appellants' request for discovery be made with greater specificity. The granting of this order is within the discretion of the trial court, *Ruwe v. Board of Springfield Twp. Trustees* (1987), 29 Ohio St.3d 59, 29 OBR 441, 505 N.E.2d 957, and we find no abuse of discretion in the trial court's having imposed those terms. Assignment of Error No. 2 is overruled, but in light of our decision on Assignment of Error No. 1, on remand appellants will have the opportunity to draft discovery requests in compliance with that order.

The judgment of the trial court is reversed and the case is remanded.

*Judgment reversed*
*and cause remanded.*

FAIN, J., concurs.

STEPHENSON, J., concurs in part and dissents in part.

MIKE FAIN, J., of the Second Appellate District, sitting by assignment.

STEPHENSON, Presiding Judge, concurring in part and dissenting in part.

I concur with the majority judgment and opinion insofar as it addresses the merits of this case. We have an anomalous situation here where the trial court clearly contemplated future discovery on the one hand, but rendered summary judgment for appellee on the other hand. I am aware of no reported decision which considers this unusual situation, but I agree with the majority that the best alternative is to remand this case to allow for future discovery in compliance with the protective order.

I am not persuaded, however, that appellee's motion to dismiss should be overruled. Thus, I respectfully dissent from that portion of the judgment and opinion.

It is a well-settled proposition of law that where a court has entered a judgment and that judgment is *voluntarily* paid and satisfied, such payment puts an end to the controversy and takes away from the defendant the right to appeal. *Blodgett v. Blodgett* (1990), 49 Ohio St.3d 243, 245, 551 N.E.2d 1249, 1250; *Rauch v. Noble* (1959), 169 Ohio St. 314, 316, 8 O.O.2d 315, 316,

159 N.E.2d 451, 453; *Lynch v. Lakewood City Bd. of Edn.* (1927), 116 Ohio St. 361, 156 N.E. 188, paragraph three of the syllabus. Therefore, the determinative issue after a judgment is paid and satisfied is whether such payment was voluntary (thereby rendering any appeal moot) or involuntary (thus preserving the right to appeal).

Appellants contend that their payment of the judgment below was involuntary because it was made "solely to prevent the sale of real property." I do not find this persuasive. While the record does reveal that a certificate of judgment was issued against appellants, there is no indication of a subsequent action to execute that lien against any specific property. Moreover, appellants could have forestalled any execution of the lien during the pendency of this appeal through the virtually automatic stay provisions of Civ.R. 62(B). I, therefore, am not persuaded by the argument that payment of the judgment was involuntarily made.

In my opinion, the better approach to take in analyzing this case is that taken by the Franklin County Court of Appeals in *Kelm v. Hess* (1983), 8 Ohio App.3d 448, 8 OBR 572, 457 N.E.2d 911. In that case, the court rejected the argument that payment of a judgment was involuntary simply because it was made under a threat of impending garnishment. The basis for the court's decision was that the parties therein would have been entitled to a stay of the trial court's judgment, as a matter of right, upon giving adequate bond. *Id.* It was concluded that if the appellant was able to pay the judgment in the first place, he would have, undoubtedly, been able to give an adequate appeal bond. Thus, the payment was not found to be involuntary and the cause was dismissed as moot.

This reasoning is intuitively logical. An appellant has a right to a stay of execution under Civ.R. 62(B) and, in almost all instances, the trial court is required to grant the same and set a supersedeas bond. Whiteside, Ohio Appellate Practice (1987) 53, Section 11.04. It is, therefore, difficult to argue that a payment was involuntary when Ohio law provides an option to stay such payment, but that option is ignored or rejected. Such was the holding in *Kelm, supra,* as well as a number of cases decided in other jurisdictions. See, e.g., *First Security Bank v. Income Prop., Inc.* (1984), 208 Mont. 121, 126, 675 P.2d 982, 985; *Lytle v. Citizens Bank* (1982), 4 Ark.App. 294, 296, 630 S.W.2d 546, 547.

In the cause *sub judice*, there is no indication in the record that appellants ever sought a stay of the judgment rendered against them. I am, therefore, not persuaded that their payment of such judgment was involuntary and, consistent with the holding in *Kelm, supra,* I would dismiss the cause as moot.