HAGOOD et al., Appellees,

v.

GAIL, Appellant.

[Cite as *Hagood v. Gail* (1995), 105 Ohio App.3d 780.]

Court of Appeals of Ohio,
Eleventh District, Trumbull County.

No. 93-T-4961.

Decided Aug. 21, 1995.

*Leo W. Keating,`Daniel G. Keating* and *Robert L. York,* for appellees.

*Daniel J. Donnelon, Joseph E. Callow, Jr.,* and *Franklin J. Allred,* for appellant.

---

CHRISTLEY, Judge.

This appeal has been taken from a final judgment of the Trumbull County Court of Common Pleas. Appellant, Ila Gail, seeks the reversal of the trial court's decision approving the "election" of appellees, William and Elaine Hagood, to buy appellant's interest in certain real property located within this county.

The following is a synopsis of those limited facts which are pertinent to our disposition of the appeal.

The parties to this action were the owners of approximately ninety-six acres of land in Vienna Township, Ohio. Located upon the majority of this land was a mobile home park which had originally been developed during the 1960s. This park was operated and maintained by Tri–City Mobile Homes, an Ohio corporation. The remainder of the land housed a separate business which sold mobile homes. This second business was also operated by Tri–City Mobile Homes.

As of the date upon which this action was filed, appellant owned a one-half interest in both the land and the various improvements which had been placed upon the land prior to 1969. The remaining interest in the land and the pre–1969

improvements were owned by appellees, who each owned a one-quarter interest. The corporation was owned in its entirety by William Hagood.

At the time appellant initially acquired her interest in 1969, she entered into a series of agreements with William Hagood. Under two of these agreements, appellant agreed to lease the entire property to the corporation for the purpose of operating the two businesses. In relation to the land upon which the park was located, the applicable agreement contained provisions governing the percentage of ownership appellant would take of any post–1969 improvement when the lease was terminated. This agreement further provided that any dispute between the parties at the end of the lease as to the value of the land or the improvements had to be submitted to arbitration.

As to the duration of the park lease, the agreement stated that the initial lease was for fifteen years, with the corporation having an option to renew for an additional five-year period. Following the conclusion of the initial lease in 1984, the corporation did not exercise the option. Nevertheless, the corporation continued to occupy the entire property. Approximately six years later, appellant brought an action against, *inter alia*, William Hagood and the corporation. Although the record of that first action is not before this court in the instant appeal, evidence presented to the trial court in this case indicated that particular action culminated in a determination that the lease of the park property had ended in 1984.

In August 1991, William and Elaine Hagood, appellees, initiated the instant action against appellant. Under the first cause of action in their amended complaint, appellees requested that the land in question either be partitioned under R.C. Chapter 5307 or, in the alternative, that the respective interests of the parties in the land be determined so that the net proceeds of any sale of the property could be distributed in the correct manner. In five of the remaining six causes of action, appellees requested the trial court to determine the relative value of, and the parties' respective interests in, the land itself and the various improvements.

Before the action could come to trial, the parties were able to stipulate as to two facts pertaining to the partition issue. First, the parties agreed that, due to the nature of the property, it could not be partitioned without causing manifest injury to its value. Second, the parties stipulated that the present value of the land and the improvements was $1,400,000.

After the trial court had granted appellees' motion for a bifurcated hearing, a bench trial was held on the sole issue of the proper interpretation of the provisions in the park agreement as to the respective interests of the parties in the various improvements on the property. As part of its judgment rendered after this aspect of the trial, the trial court held that the arbitration clause in the

agreement was still binding upon the parties, even though the lease had ended in 1984. Based upon this, the court ordered the parties to submit to arbitration the question of the proportionate value of the land and the various improvements.

The report of the arbitrators was rendered on July 29, 1993. On August 25, appellees filed notice of their intent to elect to purchase appellant's interest in the land and the improvements, and also moved the trial court to confirm the arbitrators' award. Although appellant had previously filed two separate notices indicating her intent to elect to purchase the interests of appellees, she failed to file such a notice after the arbitrators had issued their report.

On September 16, 1993, the trial court entered its judgment approving appellees' election to purchase appellant's interest. Based upon the values which the arbitrators had determined for the land and the improvements, the court held that appellant's interest was worth $560,000. Accordingly, the court ordered appellees to deposit that amount with the Clerk of Courts within forty-five days following the entry of the judgment. The court further ordered the Trumbull County Sheriff to execute and deliver a deed conveying the entire interest in the property to appellees, if and when appellees deposited the required amount.

Thirteen days after the entry of the September 16 judgment, appellant filed three documents with the trial court: (1) her notice of appeal initiating the instant appeal from that judgment; (2) a motion for relief from that judgment, pursuant to Civ.R. 60(B); and (3) a motion to stay the execution of that judgment while her Civ.R. 60(B) motion was pending. Once appellees had filed response briefs to both motions, the trial court issued a second judgment, in which it expressly denied appellant's motion for relief from judgment.[1] As part of this second judgment, the court denied appellant's motion for a stay on the basis that it was moot.

Exactly forty-five days after the entry of the September 16 judgment, on November 1, 1993, appellant filed an "emergency" motion to stay the execution of that judgment during the pendency of the instant appeal. Approximately five hours after the filing of this motion, the Trumbull County Clerk of Courts filed an acknowledgment of the receipt of $560,000 from appellees. The Trumbull County

---

1. Although not relevant to the disposition of this appeal, we would note that since the instant appeal was pending before this court at the time that the trial court issued its decision on the motion for relief from judgment, the trial court lacked jurisdiction to rule upon that motion. See *Howard v. Catholic Social Serv. of Cuyahoga Cty., Inc.* (1994), 70 Ohio St.3d 141, 147, 637 N.E.2d 890, 895.

However, subsequent to the entry of that particular judgment, this court remanded the action to the trial court for the sole purpose of allowing the court to rule upon appellant's motion for relief from judgment. On January 5, 1994, the trial court issued a new judgment, again denying that motion.

Sheriff then issued a deed to the entire property to appellees on a subsequent date.

The trial court did not issue a decision on appellant's stay motion until December 7, 1993. In its judgment entry, the court noted that appellees had paid the required amount and that a deed to the property had been delivered to them. Nevertheless, the court granted appellant's motion in part, specifically ordering appellant to place the deposited funds into an escrow account. The court further ordered appellees "to do all things necessary to preserve their ability to return to [appellant] an undivided one-half interest in the Property."

In seeking to appeal from the judgment of September 16, 1993, appellant has raised two assignments of error for our consideration. These assignments challenge the trial court's application of the arbitration clause in the park lease agreement and the procedure the court employed in allowing the parties to elect whether to purchase the opposing party's interest in the property.[2]

However, at the conclusion of oral arguments in this appeal, this court requested that the parties file supplemental briefing concerning the propriety of the procedure which the trial court followed in rendering its December 7, 1993 judgment on appellant's motion to stay the execution of the September 16, 1993 judgment during the pendency of this appeal. Specifically, we asked the parties to address the issue of the effect of the delivery of the deed to appellees, prior to the issuance of the December 7 judgment, upon the jurisdiction of this court to hear this appeal.

Upon reviewing the record and the parties' supplemental briefing, this court holds that the merits of appellant's assignments are not properly before us because they have been rendered moot. This holding is based upon the fact that the September 16 judgment had been fully executed before the trial court rendered its decision granting the stay motion in part.

As the parties aptly note in their briefs, the filing of a notice of appeal does not completely divest a trial court of jurisdiction over a case; instead, a trial court retains all jurisdiction which does not conflict with the jurisdiction of the appellate court. *Yee v. Erie Cty. Sheriff's Dept.* (1990), 51 Ohio St.3d 43, 44, 553 N.E.2d 1354, 1355. This retained jurisdiction includes the authority to take any action which would aid in the execution of the appealed judgment. *State ex rel.*

---

**2.** Appellant's assignments of error specifically provide:

"1. The trial court erred as a matter of law in referring this dispute to arbitration rather than referring the matter to a board of commissioners pursuant to Section 5307.04 of the Ohio Revised Code.

"2. The trial court erred as a matter of law by denying Mrs. Gail her statutory right to elect to purchase the property at an appraised value as outlined in Chapter 5307 of the Ohio Revised Code."

*Klein v. Chorpening* (1983), 6 Ohio St.3d 3, 4, 6 OBR 2, 3–4, 450 N.E.2d 1161, 1162–1163; *Northfield Park Assoc. v. Northeast Ohio Harness* (1987), 36 Ohio App.3d 14, 26, 521 N.E.2d 466, 478–479.

Consistent with the jurisdiction of the trial court to enforce a judgment, the nonappealing party in an action retains a legal right to initiate proceedings in aid of the execution of a judgment even after an appeal from that judgment has been taken. *Pontiac Motor Div. v. Motor Vehicle Dealers Bd.* (Sept. 15, 1987), Franklin App. No. 87AP–48, unreported, 1987 WL 17391.

Of course, a trial court's ability to exercise its jurisdiction over an appealed judgment, like the nonappealing party's right to enforce the judgment, is contingent upon the existence of a valid stay order. Although the mere filing of a notice of appeal does not act to a stay the execution of a judgment, Civ.R. 62(B) and App.R. 7(A) set forth specific procedures for obtaining an order staying the execution of the judgment until after the appeal has been concluded. Under Civ.R. 62(B), the appellant is entitled to a stay as a matter of law, *i.e.*, once a trial court has made a determination concerning the amount of the supersedeas bond which the appellant will be required to post: the court has no discretion in deciding whether to grant the stay. *State ex rel. Ocasek v. Riley* (1978), 54 Ohio St.2d 488, 490, 8 O.O.3d 466, 467, 377 N.E.2d 792, 793.

Once the appellant in an appeal has obtained a valid stay order from either the trial court or appellate court, the nonappealing party cannot initiate any proceeding to enforce the judgment in question. Nor can the trial court take any action in aid of execution. However, if the appellant neglects to obtain a stay of the judgment, the nonappealing party has the right to attempt to obtain satisfaction of the judgment even though the appeal is pending. *Pontiac Motor Div.*

Moreover, the Supreme Court of Ohio has consistently held that if the nonappealing party is successful in obtaining satisfaction of the judgment, the appeal must be dismissed because the issues raised in the appeal have become moot. This general proposition was recently reiterated by the court in *Blodgett v. Blodgett* (1990), 49 Ohio St.3d 243, 245, 551 N.E.2d 1249, 1250:

"It is a well-established principle of law that a satisfaction of judgment renders an appeal from that judgment moot. ' "Where the court rendering judgment has jurisdiction of the subject-matter of the action and of the parties, and fraud has not intervened, and the judgment is voluntarily paid and satisfied, such payment puts an end to the controversy, and takes away from the defendant the right to appeal or prosecute error or even to move for vacation of judgment." ' *Rauch v. Noble* (1959), 169 Ohio St. 314, 316, 8 O.O.2d 315, 316, 159 N.E.2d 451, 453, quoting *Lynch v. Lakewood City School Dist. Bd. of Edn.* (1927), 116 Ohio St. 361, 156 N.E. 188, paragraph three of the syllabus."

In reviewing recent appellate cases in which the foregoing basic principle has been applied, this court has noted that a dispute has arisen among the various appellate districts as to the meaning of the term "voluntary" in this particular context. This dispute concerns the circumstances under which the satisfaction of a judgment will be deemed voluntary when an award of damages is paid by the appellant prior to the completion of the appeal. Some districts have concluded that the payment of the judgment should be considered involuntary when non-payment would not be in the appellant's best commercial interest. See *Fed. Land Bank of Louisville v. Wilcox* (1991), 74 Ohio App.3d 474, 599 N.E.2d 348. In contrast, other districts have held that payment of the judgment is voluntary even when the payment is made in response to the initiation of enforcement proceedings by the nonappealing party. See *Fifth Third Bank v. Wallace Group, Inc.* (Nov. 3, 1994), Hamilton App. No. C–930699, unreported, 1994 WL 603149.

Prior to addressing the merits of this dispute, this court would note that the nature of the appealed judgment in the instant case is manifestly different from the judgments in the foregoing cases. In those cases, the appellants had been ordered in the appealed judgments to perform a particular act, and the satisfaction of the judgments was based solely upon their performance of that act. In contrast, the judgment in this case did not contain any specific order as to appellant, *i.e.*, the satisfaction of this judgment was contingent solely upon the performance of acts by appellees.

Given this distinction, it is certainly arguable that the requirement of voluntariness in the satisfaction of a judgment is inapplicable in this instance. However, given the tone of the analyses of those appellate districts which have given the term "voluntary" a broad definition, this court is convinced that such courts would hold that, by analogy, the satisfaction of a judgment does not render an appeal moot when the satisfaction was based upon the performance of acts over which the appellant has no control. Thus, we will address the merits of the dispute as to the requirement of voluntariness.

In *Fed. Land Bank of Louisville,* the appellants were found liable to the bank for failing to repay a loan in accordance with the terms of a promissory note. After bringing an appeal from the final judgment, the appellants paid the bank the required amount under the judgment. This payment was made even though the real property which they had pledged as security for the loan had previously been sold at a sheriff's sale, the bank had not initiated any proceedings to secure a lien on other real property they owned, and they had not attempted to obtain a stay of execution on the judgment.

Once the payment had been made, the bank moved the Fourth Appellate District to dismiss the appeal as moot. In denying this motion, a majority of the appellate court held that the mere payment of a judgment was not sufficient, in

and of itself, to establish the voluntary abandonment of an appeal. In essence, the majority held that an appellant's satisfaction of a judgment does not render the appeal moot in the absence of other indications that the appellant has intended to abandon the appeal.

In responding to the bank's motion, the appellants argued that they had made the payment because they wanted to avoid a forced sale of other real property. Although it did not expressly state that an appellant must set forth a legitimate reason for making the payment in order to avoid the dismissal of the appeal, the majority emphasized that the economic considerations could form a legitimate reason for not seeking a stay:

"One can easily presume several reasons why a defendant may prefer to pay a judgment rather than seek a stay or await execution. Commercial interest might be cheaper than legal interest. A judgment lien filed in a county attaches to all real property in that county and makes all of it unmarketable, or at least not mortgageable. In these days of the credit crunch, a defendant may prefer to pay a judgment rather than have to answer 'yes' to the standard credit and employment application form question: Do you have outstanding judgments against you? * * *" *Id.*, 74 Ohio App.3d at 477, 599 N.E.2d at 349.

*Fed. Land Bank of Louisville* involved an unusual situation in which the appellants paid the judgment before any enforcement proceedings were ever started by the nonappealing party. In the majority of cases in which a broad definition of the term "voluntary" has been adopted, the appellant has not paid the judgment until after the enforcement proceedings have been initiated. Under these circumstances, these particular courts have simply held that, since the payment was made in response to enforcement orders of the trial court, it could not be deemed to have been made voluntarily. In reaching this holding, these courts have not considered the effect of the appellant's failure to move for a stay. See, *e.g.*, *MIF Realty L.P. v. K.E.J. Corp.* (May 19, 1995), Wood App. No. 94WD059, unreported, 1995 WL 311365.

In contrast, those appellate courts which have adopted a limited definition of the term "voluntary," have predicated their analysis upon the failure to move for a stay. These courts have essentially held that the payment of a judgment cannot be considered involuntary when the appellant has not taken advantage of a viable legal remedy.

In *Fifth Third Bank*, the appellants paid the judgment upon receiving a court order which indicated, *inter alia*, that the trial court had granted the non-appealing party's motion to attach certain assets. In response to an inquiry by the appellate court during oral arguments, the appellants stated that they had satisfied the judgment because it was less expensive to pay the judgment than to pay for a supersedeas bond.

In its opinion in *Fifth Third Bank*, the First Appellate District ultimately concluded that the appeal had been rendered moot as a result of the payment of the judgment. The court began its analysis by holding that the fact that the supersedeas bond may have been more expensive was not sufficient to establish that the payment had been made involuntarily because it was not sufficient to demonstrate coercion. The court further held that the fact that the payment was made in response to the attachment order was also legally insufficient to establish that the payment had been made involuntarily. In support of this latter holding, the court quoted a prior decision of the Tenth Appellate District:

" 'Although appellant apparently paid the judgment under threat of garnishment, a pending garnishment would not render payment involuntary, in view of appellant's entitlement to a stay of the trial court's judgment as a matter of law, upon giving adequate bond. *State, ex rel. Ocasek v. Riley* (1978), 54 Ohio St.2d 488, 490 [8 O.O.3d 466, 467, 377 N.E.2d 792, 793]. Since appellant was in a financial position to pay the judgment, she undoubtedly would been able to give an adequate appeal bond.' " *Fifth Third Bank*, at 4, quoting *Kelm v. Hess* (1983), 8 Ohio App.3d 448, 8 OBR 572, 457 N.E.2d 911.

Upon comparing the analyses of both sides of the "voluntariness" dispute, this court finds the logic of the analysis in *Fifth Third Bank* and *Kelm* to be more persuasive. This holding is predicated upon our conclusion that the logic followed by these courts is more consistent with the logic of the Supreme Court in its most recent decision on this issue.

In *Blodgett*, the judgment in question had granted the parties a divorce. As part of its order as to the property division, the trial court had stated that the appellant-wife was to receive $2,765,000 from an escrow account if she signed a satisfaction of judgment within forty-five days following the entry of the judgment. While her appeal from this judgment was pending before the appellate court, the appellant-wife complied with the trial court's order and was given the funds. As a result, the appellee-husband moved to dismiss her appeal. The appellate court denied the motion, holding that her signing of the satisfaction of the judgment had not been done voluntarily.

Before the Supreme Court, the appellant-wife argued that her decision to comply with the trial court's order had been based upon economic distress. Specifically, she asserted that she had needed the funds immediately in order to avoid extreme financial distress.

In ultimately concluding that the appellate court had erred in denying the motion of the appellee-husband to dismiss the appeal as moot, the *Blodgett* court

held that the appellant-wife's assertion of financial difficulty was not sufficient to show that her compliance with the order had been made involuntarily:

"A person who claims to have been a victim of economic duress must show that he or she was subjected to ' * * * a wrongful or unlawful act or threat, * * * ' and that it ' * * * deprive[d] the victim of his unfettered will.' 13 Williston on Contracts (3 Ed.1970) 704, Section 1617. Further, ' * * * [m]erely taking advantage of another's financial difficulty is not duress. Rather, the person alleging financial difficulty must allege that it was contributed to or caused by the one accused of coercion.' *Id.* at 708. The Restatement of the Law 2d, Contracts, *supra,* also requires that the one who coerces the victim be the other party to the agreement * * *." *Blodgett,* 49 Ohio St.3d at 246, 551 N.E.2d at 1251.

The requirement that the duress be caused by the actions of the other party was reiterated in the *Blodgett* court's syllabus: "To avoid a contract on the basis of duress, a party must prove coercion by the other party to the contract. It is not enough to show that one assented merely because of difficult circumstances that are not the fault of the other party." Although the syllabus was worded in relation to a "contract," the court employed this standard for determining whether the appellant-wife's compliance with the judgment had been voluntary.

As part of its discussion of the duress question, the *Blodgett* court also addressed the fact that the actions of the appellant-wife had been caused by an order of the trial court:

"Because of the nature of the appellate process, [the appellant-wife] could not receive the trial court award until her appeal was decided, unless she chose to terminate the appeal herself by executing the satisfaction of judgment. *She may well have believed that this circumstance coerced her acquiescence to the satisfaction of judgment, but the workings of the judicial system are irrelevant in this context.* To avoid the satisfaction of judgment, it must be shown that the one whose actions forced [the appellant-wife] to accept the judgment was [the appellee-husband], the other party to the agreement." (Emphasis added.) *Id.,* 49 Ohio St.3d at 246, 551 N.E.2d at 1251.

Considered as a whole, the *Blodgett* decision stands for two basic propositions. First, the case stands for the proposition that a determination as to whether an appellant has voluntarily satisfied a judgment cannot be based upon economic considerations, unless certain actions by the nonappealing party constitute economic duress, *i.e.,* an appellant's failure to obtain a stay cannot be predicated upon her own financial difficulties. Second, the wording of the opinion supports the inference that a finding of involuntariness cannot be based upon the initiation

of enforcement proceedings by the nonappealing party, *i.e.,* as used in this context, duress cannot be caused by the enforcement of a legal right.

■ Stated differently, this court concludes that, for the purpose of determining whether an appeal has been rendered moot as a result of the satisfaction of the judgment, an appellant will only be deemed to have acted involuntarily if she has been the subject of duress, as defined in the *Blodgett* syllabus.

■ Applying this standard to the facts of the instant case, the court further concludes that the satisfaction of the September 16, 1993 judgment could not have resulted from the infliction of duress on appellant by appellees because the orders in the judgment only required appellees to perform certain acts. Accordingly, since the merits of this appeal could be rendered moot if the judgment was fully executed, it was necessary for appellant to obtain a valid stay order under Civ.R. 62(B) or App.R. 7(A).

As was previously noted, the record before this court indicates that not only has the September 16, 1993 judgment been fully executed, but that this execution occurred before any type of stay order had been issued by the trial court. In its judgment entry of December 7, 1993, which was the first entry in which the court tried to grant a stay, the court specifically acknowledged that appellees had deposited the required funds with the Clerk of Courts on November 1, 1993, and that appellees had been given a deed to the entire property by the Trumbull County Sheriff.

Moreover, the record supports the conclusion that the lack of a timely stay order was caused by appellant's inaction. In its September 16 judgment, the trial court stated that appellees were required to deposit the required funds within forty-five days of the entry of that judgment. Despite having this clear indication of when the execution of the judgment would occur, appellant waited until the last day of the forty-five days, November 1, to file its motion to stay the execution of the judgment pending appeal. In addition, the record shows that as of November 1, appellant had known for nearly two weeks that the trial court had denied her motion to stay the execution until her motion for relief from judgment was determined.

Although it is true that appellant's stay motion was filed shortly before the acknowledgment of the receipt of the funds was filed by the Clerk of Courts, the record supports the conclusion that appellant did not give the trial court sufficient time in which to rule upon the motion. As to this point, we would note that appellant's motion did not state that it was important for the trial court to rule

upon the motion prior to the end of the day it was filed. Given these circumstances, equity dictates that appellant should be held responsible for the fact that the September 16 judgment was executed while this appeal was pending.

The foregoing discussion gives rise to the following question: What effect did the December 7, 1993 judgment have upon the status of the appealed judgment in this case? In that particular judgment, the trial court attempted to grant appellant's motion for a stay in part. Specifically, the trial court ordered appellees to "do all things necessary to preserve their ability to return to [appellant] an undivided one-half interest in the Property * * *."

■ Although the authority on this point is slight, those courts which have addressed this issue have consistently held that the issuance of a stay order has no affect upon any enforcement proceedings which have already taken place. See *Dibert v. Ross Pattern Foundry & Dev., Inc.* (App.1957), 81 Ohio Law Abs 4, 160 N.E.2d 862; 4 American Jurisprudence 2d (1962) 846, Appeal and Error, Section 372. Accordingly, the trial court's judgment of December 7, 1993 did not constitute a valid stay order which would affect our analysis in this case.

Since the appealed judgment in this case has already been fully executed prior to the disposition of this appeal, the merits of appellant's assignments of error have been rendered moot.

Thus, it is the order of this court that the instant appeal be dismissed.

*Appeal dismissed.*

FORD, P.J., and CACIOPPO, J., concur.

MARY CACIOPPO, J., retired, of the Ninth Appellate District, sitting by assignment.