[Cite as *2115-2121 Ontario Bldg., L.L.C. v. Anter*, 2013-Ohio-2995.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 98627

## 2115-2121 ONTARIO BUILDING, L.L.C.

PLAINTIFF-APPELLEE

vs.

## DOLORES ANTER, ET AL.

DEFENDANTS-APPELLEES

## [APPEAL BY THERESA JULIA KRATUS]

### JUDGMENT:
AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-752119

BEFORE:     Boyle, P.J., Rocco, J., and E.T. Gallagher, J.

RELEASED AND JOURNALIZED:     July 11, 2013

**ATTORNEYS FOR APPELLANT**

Philip Wesley Lambert
Timothy J. Fitzgerald
James F. Koehler
Koehler Neal, L.L.C.
1301 East Ninth Street
Suite 3330, Erieview Tower
Cleveland, Ohio    44114


**ATTORNEYS FOR APPELLEES**

**For 2115-2121 Ontario Building, L.L.C.**

Richard P. Goddard
Alexander B. Reich
Calfee, Halter & Griswold, L.L.P.
The Calfee Building
1405 East Sixth Street
Cleveland, Ohio 44114

**For Dolores Anter, et al.**

David C. Eisler
P.O. Box 1721
Medina, Ohio    44258

MARY J. BOYLE, P.J.:

{¶1} Defendant-appellant, Theresa Kratus, appeals the trial court's decision granting the motion to appoint a receiver filed by plaintiff-appellee, 2115-2121 Ontario Building, L.L.C. ("Ontario") and the trial court's order detailing the receiver's power and duties over defendant, the Macron Investment Company ("Macron"). Finding some merit to this appeal, we affirm in part and reverse in part.

Procedural History and Facts

{¶2} In March 2011, Ontario filed the underlying lawsuit against Macron and several named shareholders of Macron. In its complaint, Ontario alleges that Macron has a single class of common stock ("Company Shares") with a total of 64 Company Shares outstanding. Ontario further alleges that it has 32 Company Shares, making it a 50 percent shareholder of Macron. The other 32 Company Shares are owned by defendants, Joseph Anter, Mark Anter, Theresa Kratus (a.k.a. Theresa Maloof), William Maloof (as custodian for Simon Maloof), and/or SAM, Inc. ("shareholder defendants"), making them collectively 50 percent shareholders of Macron.

{¶3} Ontario alleges that counsel for Macron has memorialized Ontario's purchase of 32 Company Shares, prepared Company Shares certificates reflecting Ontario's ownership of 32 Company Shares, and presented Company Shares to Macron for execution but that "Macron has wrongfully failed and refused to execute and deliver" the Company Shares certificates to certify and evidence the 32 Company Shares owned by Ontario. As a result, Ontario sought a declaratory judgment that it is a 50 percent

shareholder of Macron and an injunctive order requiring Macron to execute and deliver to Ontario the 32 Company Shares. Ontario further alleged a third count in its complaint, seeking an accounting.

{¶4} Kratus answered and asserted a single counterclaim, seeking a declaration that Macron has only 63 Company Shares outstanding — not 64 as alleged by Ontario — and that Ontario has at most 31 Company Shares.

{¶5} On March 29, 2012, after the parties filed cross-motions for summary judgment, the trial court ultimately granted Ontario's motion and denied Kratus's cross-motion. In finding in favor of Ontario on all three of its claims, the trial court issued an order that (1) declared that Ontario had purchased 32 valid shares and therefore had 50 percent of the 64 total outstanding shares of Macron, (2) ordered Macron "to forthwith issue to Ontario the share certificates evidencing Ontario's ownership of 32 shares," and (3) ordered Macron to forthwith provide an accounting to Ontario of all of Macron's rents, other income, and expenses relating to the property at 2115-2121 Ontario, Cleveland ("Stanley Block building").

{¶6} Kratus and Macron separately appealed that decision to this court.

{¶7} While that appeal was pending, Ontario filed a motion to show cause as to why Macron and its attorney should not be held in contempt for their refusal to carry the trial court's judgment into effect. On June 8, 2012, Ontario filed a motion for the appointment of a receiver for Macron "to effectuate the court's judgment."

{¶8} In its motion, Ontario also pointed out that the Stanley Block building —

Macron's sole asset — was in total disrepair and that two years ago, on April 20, 2010, Cleveland's director of building and housing had declared the building to be a public nuisance and ordered that all violations be abated by either making the building code compliant or demolishing the building. The city ultimately criminally prosecuted Macron in Cleveland Municipal Court, Housing Division, for the building code violations, resulting in fines totaling $105,000 being imposed against Macron in May 2011. According to Ontario, those fines remain outstanding.

{¶9} Ontario further argued in its motion that Macron is now facing additional cumulative fines of $15,000 per day, which started on June 7, 2012, as a result of Macron failing to comply with the housing court's orders issued in a civil action filed by the city. In that action, the city obtained a permanent injunction that required Macron to abate the nuisance created by the Stanley Block building. Ontario asserted in its motion that the only effective means to obtain compliance with the housing court's orders requiring abatement of the nuisance was through a court-appointed receiver to contract for the immediate demolition of the building.

{¶10} The trial court held an evidentiary hearing on the motion for appointment of a receiver on June 14, 2012. Notably, although Kratus objected to the trial court appointing a receiver for the purpose outlined in Ontario's motion — namely, to order the demolition of the Stanley Block building — she conceded that the trial court had jurisdiction to appoint a receiver to enforce the trial court's judgment, i.e., transfer the Company Shares and facilitate an accounting. On at least four separate points during the

hearing, Kratus indicated that she had no objection and, in fact, consented to the appointment of a receiver to carry the trial court's judgment into effect. Kratus, however, vehemently objected to granting a receiver any powers beyond the enforcement of the trial court's underlying judgment on the basis that the trial court lacked jurisdiction to do so. Kratus argued that the powers that Ontario sought to confer to a receiver exceeded the scope of the underlying judgment and should have been raised in an ancillary proceeding to a separate and distinct action dissolving the corporation. According to Kratus, Ontario essentially sought to subvert the statutory requirements for dissolving a corporation through the appointment of a receiver.

{¶11} On June 18, 2012, the trial court granted Ontario's motion for an appointment of a receiver. On June 26, 2012, the trial court entered an order detailing the receiver's powers and duties. Notably, in Section 4.3 of that order, the trial court stated the following concerning compensation of the receiver:

> The court recognizes that the primary, if not only, asset of the receivership estate is real property, and that if it is not in the best interest of the estate that the property be sold forthwith then there will be no fund from which to compensate the receiver and any professionals she may employ. In that event, the plaintiff, as the party that moved for the appointment of a receiver, shall be required to advance sums necessary to compensate the receiver, which will then be taxed as costs in the action. Additionally, the court recognizes that its decision on summary judgment that forms part of the basis for the appointment of a receiver is currently being appealed. Finally, the court recognizes that the order appointing the receiver might be appealed. If any such appeal results in the order appointing the receiver being invalidated, then the plaintiff will be required to pay the receiver and other receivership expenses, and those payments will not be taxed as costs. If these conditions are unacceptable to the plaintiff then the plaintiff must move forthwith to vacate the order appointing the receiver.

**{¶12}** Kratus filed this appeal concerning the trial court's appointment of a receiver and its order detailing the receiver's power and duties. She raises the following single assignment of error:

> The trial court erred in granting appellee's motion for the appointment of a receiver.

## Jurisdiction

**{¶13}** In her first argument, Kratus argues that the trial court lacked jurisdiction to appoint a receiver because the case was on appeal in our court.

**{¶14}** Initially, we note the governing standard of review. "Because the appointment of a receiver is such an extraordinary remedy, the party requesting the receivership must show by clear and convincing evidence that the appointment is necessary for the preservation of the complainant's rights." *Equity Ctrs. Dev. Co. v. S. Coast Ctrs., Inc.*, 83 Ohio App.3d 643, 615 N.E.2d 662 (8th Dist.1992). The decision to appoint a receiver is within the sound discretion of the trial court and will not be disturbed absent a clear abuse of discretion. *State ex rel. Celebrezze v. Gibbs*, 60 Ohio St.3d 69, 73, 573 N.E.2d 62 (1991). Appellate review of an order appointing a receiver is confined to "the purpose of determining whether there is clear and convincing evidence tending to prove the facts essential to sustain the order." *Malloy v. Malloy Color Lab, Inc.*, 63 Ohio App.3d 434, 436, 579 N.E.2d 248 (10th Dist.1989). In reviewing a trial court's appointment, we may not consider the weight of the evidence; the appointment of a receiver "may be reversed only when there is failure of proof which would be essential to support the order." *Id.*

{¶15} Notwithstanding the above, a trial court abuses its discretion if it issues an order inconsistent with its own jurisdiction. *See, generally, Lingo v. State*, 8th Dist. No. 97537, 2012-Ohio-2391 (finding the trial court abused its discretion in certifying class action because it lacked jurisdiction to hear the case).

{¶16} Turning to Kratus's first argument, she challenges the trial court's authority to appoint a receiver for the purpose of taking control of property completely unrelated to the underlying final judgment and after the judgment has been appealed. Kratus's argument, however, ignores that in the absence of the appellant obtaining a stay of the trial court's judgment in accordance with Civ.R. 62(B) and App.R. 7, the trial court retains jurisdiction to enforce its judgment. *See State ex rel. Klein v. Chorpening*, 6 Ohio St.3d 3, 450 N.E.2d 1161 (1983); *Hagood v. Gail*, 105 Ohio App.3d 780, 664 N.E.2d 1373 (11th Dist.1995). Indeed, under such circumstances, "the trial court retains all jurisdiction not inconsistent with the reviewing court's jurisdiction to reverse, modify, or affirm the judgment." *Howard v. Catholic Social Servs. of Cuyahoga Cty., Inc.*, 70 Ohio St.3d 141, 146, 637 N.E.2d 890 (1994). Thus, when an appeal is pending before a court of appeals, the trial court is divested of jurisdiction except to take action in aid of the appeal. *McAuley v. Smith*, 82 Ohio St.3d 393, 396, 696 N.E.2d 572 (1998).

{¶17} Notably, R.C. 2735.01 (the receiver statute) specifically authorizes the trial court to appoint a receiver in a post-judgment setting for the purpose "to carry the judgment into effect." R.C. 2735.01(C). This authority is consistent with the trial court's limited jurisdiction over a case following the filing of an appeal.

**{¶18}** In this case, Kratus never sought a stay of the trial court's judgment. Further, at the hearing on the motion to appoint a receiver, Kratus acquiesced in the appointment of a receiver for the limited purpose of carrying the judgment into effect. Thus, to the extent that the trial court appointed a receiver to enforce its judgment, i.e., transfer the stocks and provide an accounting, we find no error or lack of jurisdiction. The costs incurred by the receiver in connection with these duties, therefore, should be properly taxed as costs for Macron to pay.

**{¶19}** However, we recognize that the trial court's order detailing the powers and duties of the receiver far exceeded the enforcement of its underlying judgment. Aside from the power to enforce its judgment, the trial court's order granted the receiver additional powers and authority, detailed in approximately eight pages. Among the various powers listed, the trial court authorized the receiver "to take immediate possession, control, management and charge of the Stanley Block property," with the purpose "to preserve and maximize the value of the Stanley Block property as a whole." Notably, the preservation of Macron's assets was never a part of the underlying action. The complaint alleged only three counts, seeking the following specific relief: (1) a declaration that Ontario was a 50 percent shareholder, (2) injunctive relief ordering the transfer of the shares, and (3) an accounting.

**{¶20}** Ontario counters that this issue has not been preserved for our review because Kratus did not assign it as error. We disagree. Kratus appealed both the order appointing the receiver dated June 18, 2012, and the order detailing the receiver's powers

and duties dated June 26, 2012.   Although Kratus identifies only a single assignment of error, her first argument in support of the assignment of error goes directly to the trial court's jurisdiction to appoint a receiver for the purpose of taking control of the Stanley Block building — an issue that was never part of the underlying litigation or final judgment.

{¶21} We note that Ontario also moved for the appointment of a receiver under other provisions of the statute that do not limit a receiver to carrying the trial court's judgment into effect.   Relevant to this appeal, R.C. 2735.01 provides as follows:

> A receiver may be appointed by the supreme court or a judge thereof, the court of appeals or a judge thereof in his district, the court of common pleas or a judge thereof in his county, or the probate court, in causes pending in such courts respectively, the following cases:
>
> (A) In an action by a vendor to vacate a fraudulent purchase of property, or by a creditor to subject property or a fund to his claim, or between partners or others jointly owning or interested in any property or fund, on the application of the plaintiff, or of a party whose right to or interest in the property or fund, or the proceeds thereof, if probable, and when it is shown that the property or fund is in danger of being lost, removed, or materially injured;
>
> * * *
>
> (C) After judgment, to carry the judgment into effect;
>
> * * *
>
> (E) When a corporation has been dissolved, or is insolvent, or in imminent danger of insolvency, or has forfeited its corporate rights;
>
> (F) In all other cases in which receivers have been appointed by the usages of equity.

{¶22} Although the trial court's appointment of the receiver with all the powers

and duties conferred in its June 26, 2012 order may have been appropriate for the granting of a receiver under R.C. 2735.01(A), (E), or (F), these provisions contemplate the appointment of a receiver during a pending cause and not post-judgment. Conversely, R.C. 2735.01(C) specifically contemplates the appointment of a receiver post-judgment for purpose of enforcing the judgment. In this case, although an intervening act occurred between the final judgment and Ontario's motion for the appointment of a receiver, namely, Macron was facing significant contempt fines in housing court, we find no authority that extends the trial court's authority to appoint a receiver post-judgment other than to effectuate the enforcement of the judgment.[1]

{¶23} And while we are cognizant the appointment of a receiver is a provisional remedy, and cannot be the sole basis for the filing of a lawsuit, Ontario could have moved for the appointment of a receiver by filing a *separate* action to dissolve the corporation under R.C. Chapter 1701. Indeed, the thrust of Ontario's motion for the appointment of a receiver was to demolish the Stanley Block building — the sole asset of Macron. Further, according to Ontario, Macron was not engaged in any business and was insolvent. Notably, however, none of these issues were part of the underlying action at issue in this case.

{¶24} Thus, to the extent that the trial court granted the receiver authority to perform duties outside the scope of enforcing its judgment, we find that the trial court

---

[1] R.C. 2735.01(D) is the only other provision that allows for the appointment of a receiver "after judgment" but is not applicable in this case. Notably, Ontario did not seek the appointment of a receiver under this provision.

lacked jurisdiction to do so and therefore abused its discretion. We likewise find that the fees and costs incurred by the receiver for exercising duties outside of the specific enforcement of the trial court's judgment should be paid by Ontario as set forth in Section 4.3 of the trial court's order.

{¶25} Finally, contrary to Ontario's claim, we do not find that Kratus's challenge of the appointment of the receiver and the scope of her powers is moot. Notably, the party responsible for paying the costs incurred by the receiver specifically hinges on whether we find that the trial court acted within its jurisdiction to appoint the receiver and grant her such powers and authority. The trial court preserved this issue in its specific order detailing the receiver's powers and duties, namely, Section 4.3. And while Ontario claims that the receiver never took any action with respect to the Stanley Block building, we note that the record reflects that the receiver's fees and expenses total over $150,000.

{¶26} The sole assignment of error is sustained in part and overruled in part. Given our resolution of Kratus's first argument, we find her remaining arguments raised in her brief to be moot.

{¶27} In summary, we affirm the trial court's appointment of the receiver for the limited purpose of carrying its judgment into effect and find that the costs and fees incurred in connection with those duties are properly charged to Macron. We further find, however, that the trial court abused its discretion in granting the receiver powers and duties outside the scope of enforcing its judgment. The costs and fees incurred for

duties performed unrelated to the enforcement of the judgment should be paid by Ontario.

**{¶28}** Judgment affirmed in part, reversed in part, and remanded to the lower court for further proceedings consistent with this opinion.

It is ordered that appellees and appellant share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

MARY J. BOYLE, PRESIDING JUDGE

KENNETH A. ROCCO, J., and
EILEEN T. GALLAGHER, J., CONCUR